Elliott Unemployment Compensation Case.

Argued November 15, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Earl F. Reed, Jr.,* with him *Thorp, Reed & Armstrong,* for appellant.

*Sydney Reuben,* Special Deputy Attorney General, with him *Herbert B. Cohen,* Attorney General, for appellee.

*S. Harold Grossman,* for intervenor, appellee.

OPINION BY WOODSIDE, J., January 17, 1956:

This is an appeal by the employer from an order of the Unemployment Compensation Board of Review granting benefits to the claimant, Joann Carr Beckner. The appellant contends that the claimant was disqualified under the provisions of section 402(b) of the Unemployment Compensation Law, as amended August 24, 1953, P. L. 1397, §4, 43 PS §802(b).

The claimant was employed as a secretary by the Elliott Company of Jeannette, for a period of three years. She worked for the company on May 29, 1954 and received two weeks vacation pay thereafter. The claimant was married on June 6, 1954 and at the close of her vacation the employment relationship was terminated in accordance with the policy set forth under the terms of the agreement entered into between the company and Local 2380, United Steelworkers of America, C.I.O. in its capacity as bargaining representative for the employes of the Elliott Company. This agreement became effective December 1, 1952 and provided, inter alia, as follows: "It is agreed by the company and the union that insofar as it is practicable to do so in the employment of women, employment should be restricted to unmarried women . . . Any woman presently

employed will be required to resign if she marries subsequent to May 27, 1947."

Although claimant when first employed by the company was a member of the union, she had been forced to give up her union membership upon accepting the secretarial position.

In the *Means Unemployment Compensation Case*, 177 Pa. Superior Ct. 410, 110 A. 2d 886 (1955), involving the same employer and the same provisions of the company-union agreement, we denied benefits to the claimant whose unemployment was brought about under the above agreement when she married. We held that the claimant, who was a member of the union, was voluntarily unemployed as the result of the "action of her own delegated bargaining agent" in entering into the agreement which resulted in her separation from employment.

Claimant makes no serious effort to distinguish this case from the *Means* case, arguing rather that the *Means* case was erroneously decided and should be reversed.

The Board in allowing benefits attempted to distinguish the instant case from the *Means* case on the theory that since the claimant herein was not a member of the union, it was not acting as her agent so as to render its negotiation of the agreement a volitional act on her part.

The record indicates that the policy with respect to the employment of married women has been applied to non-union as well as union personnel since the inception of the agreement, and, as stipulated by counsel, "the claimant was advised and knew of said conditions when she entered the employ of Elliott Company." Accordingly the only factual distinction between the *Means* case and this case is that in the former the terms of employment were accepted by claimant, Means,

through an agent while in the latter by claimant, Beckner, in person. Thus the claimant herein by accepting a position with the employer with full knowledge of the terms and conditions attached thereto did personally bind herself to adhere to them—and just as a union member brings about a voluntary separation from employment by virtue of the agreement negotiated by her agent union, so does this claimant by agreeing at the time of hire that the employment relationship would terminate if she married.

Leaving employment to marry has not been accepted as good cause by our appellate courts. *Dawkins Unemployment Compensation Case,* 358 Pa. 224, 56 A. 2d 254 (1948).

While the ". . . public policy of the State indeed encourages marriage, . . . marriage is not a surrender to circumstances of the kind and quality that *compel* a decision to leave one's employment." *Dames Unemployment Compensation Case,* 158 Pa. Superior Ct. 564, 566, 45 A. 2d 909 (1946).

Section 402(b), as it related to this case, provided that: "An employe shall be ineligible for compensation for any week . . .

"(b) In which his unemployment is due to voluntarily leaving work without good cause . . . marital, filial and domestic circumstances and obligations shall not be deemed good cause within the meaning of the act . . ."[1]

---

[1] The last paragraph of the above quoted provision was added by the Act of August 24, 1953, P. L. 1397. The section has subsequently been amended by Act No. 5 Laws of 1955, Purdon's Pennsylvania Legislative Service, 1955. Acts 1-10, p. 6, which substituted "cause of a necessitous and compelling nature" for "good cause" and deleted "marital, filial and domestic circumstances and obligations shall not be deemed good cause under the meaning of this act."

The claimant's separation was voluntary and without good cause as these terms are construed under the act and she accordingly is disqualified under section 402(b) of the Unemployment Compensation Law from receiving benefits.

Order of Board reversed.

---

In appeal No. 128 April Term, involving Margaret F. Roy who was awarded benefits by the Board after separation from employment with the appellant, there is a stipulation of counsel that all material facts are substantially identical to the *Beckner* case and that the decision of the Superior Court in the *Beckner* case shall be controlling in the *Roy* case.

The order of the Board in appeal No. 128 is accordingly reversed.