E. W. Twitchell, Inc. *v.* Unemployment Compensation Board of Review.
Fraley Unemployment Compensation Case.

Argued October 3, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William L. Hammond,* with him *Ronald Souser* and *Souser, Schumacker, Kleeb & Lukenheimer,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY HIRT, J., November 12, 1957:

The claimant Lucy M. Fraley had been in the employ of the appellant company, continuously, for eleven years. She was in the fourth month of pregnancy and her attending physician on May 12, 1955 certified that "She has been advised to stay away from work for the duration of her pregnancy and post-partum period." It was on this certificate that a six-months leave of absence was granted, by appellant, beginning with the above date, in accordance with a subsisting collective bargaining agreement entered into with the employer by claimant's union. The provision of the contract, insofar as it is material to the grant of such leave of absence provides: "Female employees, in case of maternity, shall have the right to receive a leave of absence of six (6) months as they may choose. During such leave of absence said employee's seniority shall accumulate. If, however, the employee desires additional time, she may only take such time after taking a doctor's examination, and only for one month additional at a time. Should the doctor rule that the employee is fit to return to work and she does not do so, she shall lose all seniority in the plant."

There is no dispute as to the facts. On May 12, 1955, the claimant's last day of work, she understood that her child would be born about October 4, 1955 and it was on that expectation that the six-months leave of absence was applied for and granted. The child however was not born until November 22. A representative of the

bureau, who had investigated the attending circumstances, testified, without contradiction: "The ordeal this girl went through, giving birth, was out of the ordinary. There was a question of life and death; nevertheless, the baby was born and put into an incubator . . ." Three weeks later (under all the evidence within a reasonable post partum period) on December 26, this same representative at claimant's request reported to the employer's personnel officer that she was available for work and was told that there was no work for her. Thereupon on the advice of the bureau representative the claimant filed her claim for unemployment compensation.

Benefits were refused by the referee who took the view, under §402(b) of the Unemployment Compensation Law, as last amended by the Act of March 30, 1955, P. L. 6, 43 PS §802, that claimant's unemployment was voluntary and without good cause. The board in reversing the referee stated: "We hold that the claimant cannot be disqualified from receiving benefits under the provisions of Section 402(b) of the Law. The claimant in the instant case requested a six month leave of absence and was granted it with the anticipation that her child would be born on or about October 4, 1955. However, claimant's child wasn't born until November 22, 1955, and therefore claimant was not able to return to work on November 12, 1955, at which time her six month leave expired. Claimant sought reinstatement three weeks after the birth of her child thereby showing her good faith in attempting to maintain the employer-employee relationship. Under these circumstances we see no basis for holding that claimant voluntarily terminated her employment without a necessitous and compelling reason."

We are in accord with the reasoning of the board. We too are convinced that the claimant used due dili-

gence in the effort to maintain her employe relationship with the appellant. It is conceded that a reasonable minimum post partum period is four weeks; whereas this claimant notwithstanding her difficulty in the delivery of the child notified appellant that she was ready to resume her work within three weeks. She had misconstrued the provision of the union-employer contract, to mean that a leave of absence because of pregnancy continued until she was able to return to work after the birth of the child. There is some excuse for misapprehension in claimant's mind as to the intent of the provision. It clearly was intended that the employer-employe relationship should continue during the six-months leave, and the contract does not say that a workman's status, as such, shall terminate at the end of the leave period. The emphasis in the provision of the contract is upon the accumulation of *seniority rights* during the leave and the loss of them at the end of the period. Forfeiture of the status as an employe is not specifically mentioned. The record is clear that the claimant was not aware of the time when her leave of absence actually expired. And good faith on her part was shown when she tried to return to work. Under the evidence the board properly concluded that claimant did not abandon her employment relationship but was discharged without good cause by her employer. She therefore was eligible for compensation benefits.

*Means Unempl. Compensation Case,* 177 Pa. Superior Ct. 410, 110 A. 2d 886 and *Elliott Unempl. Compensation Case,* 180 Pa. Superior Ct. 542, 119 A. 2d 650 on which appellant relies have no application. Under the circumstances of those cases and the applicable terms of the subsisting union-employer agreement the employers had no choice but to dispense with the claimants' services.

Decision affirmed.