Western Electric Co. Inc. *v.* Director of the Division of Employment Security.

even though no appeal was taken from it. We may at any time of our own motion take note of a lack of jurisdiction. *Jones* v. *Jones,* 297 Mass. 198, 202, and cases cited. *Kirby* v. *Kirby,* 338 Mass. 263, 266.

Apparently the executors, who had been the employers, had closed the estate while the workmen's compensation case was still pending and at a time when no order against them under § 28 had been made. It should be stated in contemplation of further proceedings that as a general principle once litigation has been commenced, the parties take their chance of reversal in an appellate court. See G. L. (Ter. Ed.) c. 214, § 19; *Carilli* v. *Hersey,* 303 Mass. 82, 84.

*Decrees reversed.*

---

WESTERN ELECTRIC COMPANY, INC. *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & others.

Essex. October 8, 1959. — January 4, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Employment Security,* Maternity leave of absence, Employment relationship, Leaving work. *Contract,* Of employment.

The employment relationship between an employer and an employee, who was granted a maternity leave of absence during which she performed no services for and received no wages from her employer, continued throughout such leave where the application therefor listing the conditions on which her "reinstatement" at the expiration of her leave might be effected, and the collective bargaining agreement between the union of which she was a member and her employer containing detailed procedure for maternity leaves of absence, showed an intent not to sever completely the employer-employee status during maternity leave; and the employee "left" her work, not at the start of her maternity leave of absence for a cause not "attributable to the employing unit" as contended by her employer in a proceeding under the employment security law, G. L. c. 151A, but when her employer denied her application for reëmployment at the termination of her leave for the reason that no work was available, and she then became entitled to unemployment benefits.

PETITION, filed in the District Court of Lawrence on July 10, 1958, for review of a decision of the board of review in the division of employment security.

The case was heard by *Darcy,* J.

*Melville F. Weston,* (*John J. Ryan, Jr.,* with him,) for Western Electric Company, Inc.

*Phillip Lemelman,* Assistant Attorney General, (*Frederick A. Harkins* with him,) for the director of the division of employment security.

*Arthur P. Foster,* for the claimants.

SPALDING, J.  The question is whether these eighty-five claimants who were employed by Western Electric Company, Inc., hereinafter called Western, are entitled to unemployment benefits under G. L. c. 151A.  The director of the division of employment security determined that all the claimants were entitled to benefits and this decision was affirmed by the board of review after a hearing.  G. L. c. 151A, § 41.  The decision of the board was in turn affirmed by a judge of a District Court, and Western appealed (§ 42).

Although there are eighty-five claimants, it was agreed at the hearing before the board that the basic facts in all the cases were essentially the same.  The relevant facts concerning employment, leaves of absence and the reasons therefor, and refusal to reëmploy are not in dispute.

During the period of their employment by Western all the claimants were members of a union (Communications Workers of America, A. F. L.–C. I. O.) which was their certified bargaining agent.  During this period there were two collective bargaining agreements in effect, the pertinent provision of each being identical.  Article 25 of these agreements provides that "[f]or purposes of protecting term of employment, maternity leaves of absence shall be granted to employees" subject to certain conditions.  Under this section maternity leaves ordinarily are to commence when the employee reaches the sixth month of her pregnancy, but in certain instances they may commence earlier.  Article 25 also provided that "The granting of a leave of absence is

not a guarantee of reëmployment." Pursuant to art. 25 the claimants applied for, and were granted, maternity leaves of absence. "No services were performed by, and no wages were paid to, any of the claimants . . . during the periods of the leaves." At the termination of their leaves the claimants applied to Western for reëmployment. Upon applying they "went through normal hiring procedure, including physical examination by . . . [Western's] physician." They were not reëmployed, however, "for the reason that no work was available." Because of Western's denial of their applications the claimants claimed unemployment benefits under G. L. c. 151A.

General Laws c. 151A, § 25, provides in part: "No waiting period shall be allowed and no benefits shall be paid . . . under this chapter for . . . (e) The period of unemployment next ensuing and until the individual has had at least four weeks of work . . . after he has left his work (1) without good cause attributable to the employing unit . . . ."[1] The pivotal question is, At what point in time have the claimants "left . . . [their] work"? If it can be said that they "left" at the start of their respective maternity leaves they are not entitled to benefits, because the leaving would be for a cause not "attributable to the employing unit." *Moen* v. *Director of the Div. of Employment Security,* 324 Mass. 246. But if they can be said to have "left" at the end of their respective leaves, when Western denied their applications for reëmployment, they would be entitled to benefits, for the cause of their unemployment would be "attributable to the employing unit."

Since the decision of the board must be affirmed unless "[u]nsupported by substantial evidence" (G. L. c. 151A, § 42; G. L. c. 30A, § 14 [8] [e]), we turn to the record to see if we can find support for the board's decision. Unlike many cases under c. 151A, the case does not turn on the belief or disbelief of witnesses but depends for the most part on documentary evidence, especially the contracts between

---

[1] See now St. 1958, c. 677.

340 Mass. 190                                          193

Western Electric Co. Inc. *v.* Director of the Division of Employment Security.

the union and Western. We are of opinion that these contracts and the procedure followed with respect to maternity leaves indicate that the employment relationship of the claimants and Western continued during such leaves. The application signed by each employee includes a statement that the leave is granted "[w]ith the expectancy but with no guaranty of *reinstatement*" (emphasis supplied); that the applicant will ask for "reinstatement" as soon as home conditions permit; that the "seeking or acceptance of substantially full time employment elsewhere following confinement will automatically terminate . . . [her] leave and result in a break in *service*" (emphasis supplied); that she will notify Western if for any reason she "decide[s] not to apply for reinstatement at expiration of . . . [her] leave"; and that if she is unable to return at expiration of her leave and desires an extension of it she will notify Western. Article 25 provides that after reëmployment the "term of employment" (seniority) as of the date the leave began is preserved. "In addition, term of employment will accumulate during the first month of absence on such leave provided the leave follows immediately after a period of active company service." Reading these provisions together we think they show an intent not to sever completely the employer-employee status. Ordinarily an employee who had completely terminated that relationship would not be entitled to the seniority credits outlined above; nor would she be required to apply for such a termination. Further, if an employer regarded the relationship of employment to have been terminated upon the granting of leave it is hardly likely that it would have been granted subject to the above conditions.

In opposing the conclusion reached by the board of review Western relies heavily on *Moen* v. *Director of the Div. of Employment Security*, 324 Mass. 246. There the employer pursuant to a collective bargaining agreement shut down its plant to enable certain of its employees who were eligible to take vacations with pay. The claimant, although a mem-

ber of the union which was a party to the agreement, was ineligible for a paid vacation and sought unemployment benefits for the period that the plant was shut down. A decision of the board, affirmed by the District Court, denying benefits was upheld by this court on the ground that the claimant who was bound by the collective bargaining agreement had left his employment "without good cause attributable to the employing unit." The point as to when the employer-employee relationship was terminated was not decided in the *Moen* case. Moreover, the terms of the collective bargaining agreement relating to vacations did not contain any provisions similar to those in the present agreement which set forth a detailed procedure for leaves of absence. These provisions indicate an intent on the part of Western and the claimants to continue the employment relationship.

Support for our conclusion may be found in *Twitchell, Inc.* v. *Unemployment Compensation Bd. of Review*, 184 Pa. Super. Ct. 518, where it was held that an employee, who had been granted a maternity leave of six months and was not reemployed thereafter because there was no work, was entitled to unemployment benefits. There, as here, there were provisions in the union contract for accumulation of seniority rights during the leaves. The court said at page 521, "It clearly was intended that the employer-employee relationship should continue during the six-months leave . . . . Under the evidence the board properly concluded that claimant did not abandon her employment relationship but was discharged without good cause by her employer." See Kempfer, Disqualifications for Voluntary Leaving and Misconduct, 55 Yale L. J. 147, 154–159.

The decision of the District Court, affirming the decision of the board of review, is affirmed.

*So ordered.*