RAYTHEON COMPANY *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1]

Middlesex.    October 2, 1973.—February 13, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Employment Security,* Voluntary unemployment. *Words,* "Voluntarily."

Where an employer laid off a co-worker upon whom an employee relied for transportation to work, and the employee was unable to find other

[1]Etta L. Miller.

means of transportation, public or private, and left her job, she did not "voluntarily" leave work within G. L. c. 151A, § 25 (e) (1), as amended through St. 1969, c. 614, § 2, and was not temporarily disqualified from receiving unemployment benefits [594-598]; but it could not be said that the employer's action in laying off the co-worker was "good cause attributable to the employer" within subsection (e) (1) [598, n.2].

PETITION filed in the District Court of Central Middlesex on April 5, 1971, for review of a decision of the board of review in the division of employment security.

The case was heard by *Forte, J.*

*Alfred C. Phillips* (*Paul A. Butler & Charles H. Resnick* with him) for Raytheon Company.

*Joseph S. Ayoub,* Assistant Attorney General (*Hartley C. Cutter,* Assistant Attorney General, & *Israel L. Cohen* with him) for the Director of the Division of Employment Security.

TAURO, C.J. On January 5, 1970, Etta L. Miller left her job as an assembler on the night shift at the Raytheon Company's plant in Dighton because she lacked means of transportation. A co-worker who had been providing her with passenger service to the plant had been laid off by Raytheon, and she was unable to find other means of transportation, public or private. She requested transfer to the day shift, which would have been accessible to her, but there were no openings. On January 12, 1970, she was granted unemployment benefits by the director of the division of employment security. Raytheon protested this immediate award of benefits, contending that Mrs. Miller was subject to temporary disqualification in accordance with the provisions of § 25 (e) of G. L. c. 151A, as amended through St. 1973, c. 899, § 2, which reads in pertinent part, "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for . . . (e) A period of four to eight weeks, as the director shall determine, after the effective date of his claim if an individual has left his work (1) voluntarily without good cause attributable to the employing unit or its agent . . .."

A review examiner of the board of review rejected Raytheon's appeal and held that while Etta Miller's cause for

leaving was not attributable to acts by Raytheon, her departure was involuntary within the meaning of the statute, and thus she was not subject to disqualification. The full board of review, one member dissenting, agreed with this decision and its reasoning. Raytheon then sought judicial review in the District Court of Central Middlesex. The judge rejected the board's rationale, but not its result, holding that Etta Miller's departure was voluntary, but was for good cause attributable to Raytheon in that the company laid off the co-worker who had provided her with transportation. We disagree with the District Court and agree with the decision of the Division of Employment Security.

In reviewing administrative agency decisions, this and all other courts are required to give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (8), inserted by St. 1954, ·c. 681, § 1. To the extent that an agency finding is one of fact, it must stand unless "unsupported by substantial evidence." *Id.* § 14 (8) (e). Stated differently, if an agency's finding of fact is supported by "such evidence as a reasonable mind might accept as adequate to support a conclusion" (*Id.* § 1 [6]), it will not be disturbed by a reviewing court. On the other hand, to the extent that an agency determination involves a question of law, it is subject to de novo judicial review. *Id.* § 14 (8) (c). On one level, this case presents a pure question of law: can a departure from work for *personal* reasons ever be considered involuntary within the meaning of c. 151A, § 25 (e) (1), if the position given up by the employee was still available at the time of leaving? For reasons set out below, we answer that question in the affirmative. The next level of analysis — were the personal reasons which caused an employee in a particular instance to leave work so compelling as to make the departure an involuntary one — brings into play the "experience, technical competence, and specialized knowledge" of the Division of Employment Security, and its finding on that question is entitled to considerable weight, *Olechnicky* v. *Director of the*

*Div. of Employment Security,* 325 Mass. 660, 663 (1950), and should not be disturbed by a reviewing court unless it is unsupported by substantial evidence. Section 25 (e) (1) establishes two distinct prerequisites to temporary disqualification from unemployment benefits. The departure from work must be both (1) voluntary *and* (2) without good cause attributable to the employing unit or its agent. We think that the element of voluntariness was included in § 25 (e) (1) for the purpose of avoiding temporary disqualification for persons who for compelling personal reasons are forced to give up an otherwise available position. The purpose and history of the unemployment compensation statute in general, and of § 25 (e) (1) in particular, allow for no other interpretation. The grant of benefits to unemployed persons is not premised on the concept of employer fault: "Relief of the physical needs of the unemployed who are without resources of their own is manifestly a duty of government. The unemployment compensation law . . . puts that burden upon the employers and employees not exempted from its operation. . . . The harm to the common weal arising from unemployment of large numbers of people is beyond question. . . . This law affords some defence against that hazard." *Howes Bros. Co.* v. *Unemployment Comp. Commn.* 296 Mass. 275, 283 (1936). "[T]he general purpose of . . . [this law] is to afford benefits to persons who are out of work and unable to secure work through no fault of their own." *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Security,* 333 Mass. 244, 248 (1955). There is therefore little force to the argument that the benefits are intended only for those who have been fired or otherwise forced to leave by their employers. The broader purpose of the law is to provide temporary relief for those who are realistically compelled to leave work through no "fault" of their own, whatever the source of the compulsion, personal or employer-initiated. Intrinsically, the law discourages those who are not truly compelled to leave work by temporarily disqualifying those who leave their jobs voluntarily.

The history of § 25 (e) (1) indicates that the Legislature has

been well aware of the significance of the exclusion or inclusion of the word "voluntarily." In its decision, the board of review noted the interaction between various formulations of § 25 (e) (1) and its own decisions: "From 1951 to 1953, Section 25 (e) (1) . . . provided that a person would be disqualified from receiving unemployment benefits if he 'left his employment voluntarily without good cause attributable to the employing unit or its agent. . . .' During this period . . . the Board took notice of the significance of the word 'voluntarily' . . . and found that persons who were obliged to leave their work for causes over which they had no control, that is, involuntarily, were not subject to disqualification . . . .. [In 1953] the Law was amended only to the extent that the word 'voluntarily' was deleted. In decisions of the Board made subsequent to the elimination of the word 'voluntarily' from the . . . statute, no differentiation was made between a voluntary or involuntary leaving of work, the sole consideration being whether or not the claimant left with or without good cause attributable to the employing unit. Again in 1958 . . . [the law] was altered to read as follows: '. . . if an individual has left his work (1) voluntarily without good cause.' . . . [A 1969] revision . . . adds the words 'attributable to the employing unit or its . . . [agent].' " On the basis of this legislative history and responsive variations in board decisions, it is fair to say that the Legislature, in reinserting the word "voluntarily" in its 1958 version of § 25 (e) (1), fully intended that the board revert to its recognition of compelling personal reasons as sufficient grounds for avoiding disqualification.

We now turn to the question whether there was substantial evidence to support the board's determination that Mrs. Miller's personal reasons for leaving her job at Raytheon were so compelling as to make her departure involuntary. We believe there was such evidentiary support, and for that reason hold that the District Court was in error in ruling that Mrs. Miller's departure was voluntary. As the board found, "The claimant exhausted all reasonable means to preserve her employment, indicating her desire and willingness to con-

tinue her employment; that when all alternative courses of action to find other transportation or change to another shift were unsuccessful, she involuntarily left her work." She is therefore not subject to disqualification under § 25 (e) (1).[2]

The decision of the District Court must be affirmed because it reaches the correct result, although for erroneous reasons.

*Decision of the District Court affirmed.*

---

[2] Though we need not reach the question, since our holding is based on the District Court's erroneous reversal of the board's finding of involuntariness, we think it appropriate to comment on a second aspect of the District Court's decision, namely that Mrs. Miller's leaving was for "good cause attributable to the employing unit or its agent." We think that is also in error. The employee was not entitled to transportation as part of her employment and any difficulties she encountered in connection therewith were personal to the employee and not attributable to the employer. The mere fact that the problem was brought about because of the layoff of a fellow employee does not bring the matter within the statutory definition, "attributable to the employing unit or its agent." The employer was under no obligation to provide transportation or to refrain from laying off a fellow employee who was supplying such transportation.