EILEEN K. DOHONEY *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.

Berkshire. December 6, 1978. — February 15, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Employment Security*, Maternity leave of absence, Voluntary unemployment.

An employee who left her job to give birth without indicating any desire to return to work or exploring reasonable means of preserving her job, and when she was again available for work declined to accept the position she had held, was disqualified under G. L. c. 151A,§ 25 (*e*) (1), from receiving unemployment compensation. [335-338]

PETITION filed in the District Court of Central Berkshire on June 14, 1977.

The case was heard by *Cimini,* J.

---

*George J. Mahanna,* Assistant Attorney General, for the Director of the Division of Employment Security.

*Michael J. DeGregorio* for the plaintiff.

LIACOS, J. The plaintiff Eileen K. Dohoney (claimant) became pregnant and left her job with the Pittsfield National Bank (bank) on October 25, 1976. She did not indicate a desire to return when she left her job, and when again available for work, she declined to accept the position she had held. Thereafter she applied for unemployment benefits. The director of the Division of Employment Security (division) allowed benefits. The bank appealed to the division's board of review (G. L. c. 151A, § 40). The board assigned the matter to a single review examiner (G. L. c. 151A, § 41), who held a hearing on March 29, 1977. He concluded that the claimant had left work "voluntarily without good cause attributable to the employing unit" and was therefore ineligible under G. L. c. 151A, § 25(e)(1), for unemployment compensation.[1] The board of review, one member dissenting, denied the claimant's application for rehearing thereby making the decision of the review examiner the decision of the board. A judge of the District Court of Central Berkshire concluded that the claimant's reason for leaving—to give birth to a child—was of such an "urgent, compelling and necessitous nature as to make her separation involuntary," and reversed. We hold that the review examiner's

---

[1] General Laws c. 151A, § 25(e)(1), as amended through St. 1975, c. 684, § 78, provides in part: "§ 25. No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter . . . (e) [f]or the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left work (1) voluntarily without good cause attributable to the employing unit or its agent . . . ." This section of the statute provides further: "An individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the director that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary."

decision was supported by substantial evidence and not based on any error of law. We reverse the decision of the District Court.

We state the facts as found by the examiner. The bank hired the claimant on April 10, 1972, primarily as a travel department consultant. The claimant's duties also included some bookkeeping. Up to July, 1976, the claimant performed her functions on a full-time basis. At that time, she was entering the latter portion of her pregnancy and requested that she be allowed to work part time only. The bank granted the request, narrowing her responsibilities strictly to bookkeeping, and assigned the claimant's full time duties as travel consultant to another employee. October 25 was the last day the claimant worked before leaving to give birth. Before leaving, the claimant did not discuss with bank officials the possibility of returning to work after the birth of her child. The bank's vice president in charge of personnel testified that as of the day she left he had considered her employment with the bank to be terminated. In November, after having received permission from her doctor to resume working, the claimant asked to return to work at her first position, but the personnel supervisor at the bank advised her that only the part-time position that she had held before leaving was still available to her. The claimant chose not to return to work.

It is now settled that a person who is forced to leave work because of compelling personal circumstances has left work involuntarily and is not subject to temporary disqualification under G. L. c. 151A, § 25(e)(1). *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. 593, 596 (1974).[2] Moreover, it is clear that pregnancy or a pregnancy-related disability (e.g., a miscarriage)

---

[2] Soon after we decided *Raytheon*, the Legislature enacted the "urgent, compelling and necessitous" language of § 25(e)(1) relied on by both the lower court judge and the claimant. See note 1, *supra*. Neither party contends that this statutory language either enlarges or narrows our holding in *Raytheon*.

may be a compelling personal circumstance not unlike other disabilities that legitimately require absence from work, neither of which condition is viewed as causing a "voluntary" departure from work. Cf. *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 168-170 (1978) (pregnancy related disability); *Black* v. *School Comm. of Malden*, 365 Mass. 197 (1974) (pregnancy). But neither of these principles resolves the issue presented here. The mere fact of pregnancy does not relieve an employee of the need to show that pregnancy or a pregnancy-related disability was the cause of her termination of employment.

General Laws c. 151A, § 25(e)(1), provides that separation may be deemed involuntary only when the employee's "reasons for leaving were for . . . an urgent, compelling and necessitous nature . . . ." G. L. c. 151A, § 25(e), as amended through St. 1975, c. 684, § 78. As it appears in § 25(e), "leaving" refers to the termination or severance of the employment relationship, see *Western Elec. Co.* v. *Director of the Div. of Employment Security*, 340 Mass. 190, 192-193 (1960), not to a temporary absence. The distinction is crucial in that not every "urgent, compelling and necessitous" absence requires termination. Normally, a worker who anticipates a legitimate absence from work can take steps to preserve her employment. When a worker fails to take such steps and severance results, it is the worker's own inaction rather than compelling personal reasons that causes the leaving. Compare *Olechnicky* v. *Director of the Div. of Employment Security*, 325 Mass. 660 (1950), with *Raytheon Co.* v. *Director of the Div. of Employment Security, supra.* We do not believe that the Legislature intended benefits be paid to a claimant who, anticipating a necessary absence from work, fails to take reasonable means to preserve her job. In such an instance, the employee's separation need not be deemed involuntary, and disqualification under § 25(e)(1) is appropriate.

We are unpersuaded that the repeal of G. L. c. 151A, § 27, by St. 1973, c. 1042, requires a contrary result. Section 27, as appearing in St. 1965, c. 634, provided in part that "[n]o waiting period may be served and no benefits shall be paid for the period of unemployment during which an individual is unavailable for work because of pregnancy. . . . In no event shall a waiting period be served or benefits paid for the four weeks prior to or the four weeks next ensuing after the date of birth of the child." The claimant seems to suggest that repeal of this provision establishes maternity leave as involuntary per se for purposes of § 25(e)(1). We disagree. When in force, § 27 dealt solely with the question of a claimant's availability for work, see G. L. c. 151A, § 24(b), not with the issue of whether a claimant left work voluntarily. Although related, these issues are distinct. See *Keough* v. *Director of the Div. of Employment Security*, 370 Mass. 1, 5 (1976). Moreover, the express purpose of repeal as recommended by the Governor was to permit "a working woman to schedule maternity leave according to her personal needs," see 1973 House Doc. No. 6489, not to make female employees who leave their jobs to give birth automatically eligible for unemployment compensation.

It remains for us to consider whether there is substantial evidence to support the examiner's determination that by failing to request a leave of absence the claimant had failed to explore a reasonable means of preserving her job. We believe there is such support.[3] Not unlike a

---

[3] "In reviewing administrative agency decisions, this and all other courts are required to give 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.' G. L. c. 30A, § 14(8), inserted by St. 1954, c. 681, § 1. To the extent that an agency finding is one of fact, it must stand unless 'unsupported by substantial evidence.' . . . The next level of analysis—were the personal reasons which caused an employee in a particular instance to leave work so compelling as to make the departure an involuntary one—brings into play the 'experience, technical competence, and specialized knowledge' of the Division of Employment Security, and its finding on that question is

person who had scheduled elective surgery, the claimant anticipated her departure from work well in advance. She had ample time and opportunity to explore with the bank the possibility of returning to work once she was physically able to do so. In such circumstances, it was proper for the examiner to have concluded that if the claimant had wanted to preserve her job, she would have requested a leave of absence. Employment contracts, including collective bargaining agreements, usually provide for leaves whereby the employment relationship continues and the employee maintains her job-related rights and status. See, e.g., *Western Elec. Co. v. Director of the Div. of Employment Security*, 340 Mass. 190, 191 (1960). Furthermore, G. L. c. 149, § 105D, inserted by St. 1972, c. 790, § 1, specifically requires that a pregnant employee "who shall give at least two weeks' notice to her employer of her anticipated date of departure and intention to return, shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave."[4] It is undisputed that the claimant here failed without justification to explore any of these possibilities. She is therefore subject to disqualification under § 25(*e*)(1).

---

entitled to considerable weight, *Olechnicky* v. *Director of the Div. of Employment Security*, 325 Mass. 660, 663 (1950), and should not be disturbed by a reviewing court unless it is unsupported by substantial evidence." *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. 593, 595-596 (1974).

[4] In referring to § 105D, we do not mean to imply that failure to comply with its terms is conclusive evidence that the employee left her job voluntarily. Situations may occur in which a pregnant employee can show that noncompliance is in no way indicative of her willingness or desire to preserve her post. For example, the employee might not qualify for statutory protection—§ 105D applies only to employees who have "completed the initial probationary period" or who have been "employed by the same employer for at least three consecutive months as a full time employee," and who are absent for no more than eight weeks. Or because of the employer's failure to post notice of the provision as required, the employee might not have had any notice of her rights. The claimant here makes no such claim.

The decision of the District Court is reversed.

*So ordered.*