DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY *vs.*
KATHY FITZGERALD & another[1].

Suffolk.   November 3, 1980. — December 16, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Employment Security*, Voluntary unemployment, Maternity leave of
absence, Employment relationship.

A welder whose employment was terminated after she had abandoned
her job for health reasons connected with her pregnancy and on the
advice of her physicians was not, in the circumstances, barred from
receiving unemployment compensation benefits by so much of G. L.
c. 151A, § 25 (*e*) (1), as temporarily disqualifies an employee whose
departure from work is voluntary without good cause attributable to
the employer.  [161-162]

An employee who was granted a maternity leave from her job as a welder
but who had another line of work suitable to her experience which she
was capable of doing and available to do although she had not been
able to find a job in that line was in total unemployment within the
meaning of G. L. c. 151A, § 1 (*r*) (2), and eligible for unemployment
benefits pursuant to § 29 (*a*).  [162-164]

CIVIL ACTION commenced in the Boston Municipal Court
Department on April 12, 1979.

The case was heard by *Pino, J.*

*Vivian M. M. Bendix,* for the employee.

*George J. Mahanna,* Assistant Attorney General, for Di-
rector of the Division of Employment Security.

KAPLAN, J.   Kathy Fitzgerald (employee) had worked as
a welder for General Dynamics Corporation (company)
since 1976.  On September 4, 1978, the employee informed
the company that she was pregnant, and on September 15,
1978, she presented to the company's medical staff letters

[1] General Dynamics Corporation (Quincy Shipbuilding Division).

from her physicians stating that for health reasons connected with her pregnancy she must cease work as a welder but would continue able to do lighter work. At the same time she applied to the company's personnel office for lighter work in the form of a clerical job for which she was qualified by earlier experience. She was told there was no current vacancy. A company physician, evidently disagreeing with the judgment of the employee's physicians, informed the employee that she could continue safely as a welder (at least if she used a respirator), and refused to support her request for a maternity leave of absence. After seeking further opinions,[2] the employee decided to act on the basis of her doctors' advice and declined to report for work as a welder. She was "terminated" on September 28, 1978.[3]

The employee "grieved" the denial of leave under procedures in the applicable union contract. The result was that she was placed on maternity leave by letter of December 18, 1978, retroactive to her last day of work, September 13, 1978.

From the time of termination, the employee made repeated efforts to find clerical or related work with local employers, but without success. On November 10, 1978, she applied for unemployment compensation. It was allowed in the first instance;[4] was disallowed on review by a review examiner after hearing (January 24, 1979); and on the record made was finally allowed by the board of review (March 15, 1979). However, on the Director's petition for review by the Municipal Court of the City of Boston (see G. L. c. 151A, § 42), a judge of that court found for the Director (December 10, 1979). The case is here on the judge's report. We think the board of review was right.

---

[2] The employee spoke with an industrial hygienist on union staff and an inspector for OSHA (Occupational Safety and Health Administration).

[3] The employee called in from time to time to make clear that her absence from the welding job was for reasons of health on her doctors' orders.

[4] This was on December 4, 1978, before maternity leave was granted.

Only a question of law seems presented on the facts as recited (cf. *Director of the Div. of Employment Security* v. *Fingerman,* 378 Mass. 461 [1979]), and we emphasize that this question and our answer to it are limited to the facts. We do not attempt to dilate in general upon the rights of employees on maternity leave to claim unemployment benefits.

1. First we make the point that the employee was not barred from those benefits by so much of G. L. c. 151A, § 25 (*e*) (1), as temporarily disqualifies an employee whose departure from work is voluntary without good cause attributable to the employer.[5] These are dual conditions of the disqualification (see *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 596 [1974]), and here a "voluntary" quit is not made out. The employee was not unreasonable in deciding to abandon her regular job by reason of her pregnancy,[6] and the involuntary char-

___

[5] The relevant statutory text of § 25, as amended through St. 1980, c. 131, § 10, is as follows: "No waiting period shall be allowed and no benefits shall be paid to an individual under this chapter . . . (*e*) For the period of unemployment next ensuing and until the individual has had at least four weeks of work and in each of said weeks has earned an amount equivalent to or in excess of his weekly benefit amount after he has left his work (1) voluntarily without good cause attributable to the employing unit or its agent . . . . An individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the director that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary."

[6] "It is now settled that a person who is forced to leave work because of compelling personal circumstances has left work involuntarily and is not subject to temporary disqualification under G. L. c. 151A, § 25 (*e*) (1). *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 596 (1974). Moreover, it is clear that pregnancy or a pregnancy-related disability (e.g., a miscarriage) may be a compelling personal circumstance not unlike other disabilities that legitimately require absence from work, neither of which condition is viewed as causing a 'voluntary' departure from work. Cf. *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination,* 375 Mass. 160, 168-170 (1978) (pregnancy-related disability); *Black* v. *School Comm. of Malden,* 365 Mass. 197 (1974) (pregnancy)" (footnote omitted). *Dohoney* v. *Director of the Div. of Employment Security,* 377 Mass. 333, 336-337 (1979).

acter of that decision is emphasized by her efforts to obtain maternity leave in order to improve the chances of ultimate return to the job, as well as by her efforts during the period of the leave to secure alternative work. See *Dohoney* v. *Director of the Div. of Employment Security*, 377 Mass. 333, 336-337 (1979). There was no finding at any stage of the administrative process, nor, in our view, could there rightly have been a finding, that the employee was unjustified in refusing work as a welder; and we do not understand the judge to have rested his decision on any such proposition. The Director does not urge it in his brief. This, then, is not a case where an employee requests maternity leave at a time when she should in reason recognize that she is able to continue at her regular work without predictable damage to herself or the child. We do not deal here with the legal consequences of an employee's going on leave in such circumstances. Cf. *Western Elec. Co.* v. *Director of the Div. of Employment Security*, 340 Mass. 190 (1960).[7]

2. Although not suffering disqualification by reason of § 25 (*e*) (1), a claimant may yet be defeated by § 1 (*r*) (2), and the latter provision was the focus of dispute between the review examiner and the judge,[8] on the one hand, and the board of review, on the other. General Laws c. 151A, § 1 (*r*) (2), as appearing in St. 1951, c. 763, § 1, describes "total unemployment" thus: "[A]n individual shall be deemed to be in total unemployment in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration,[9] and in which, though capable of and available for work, he is unable to obtain

---

[7] In reading *Western Electric*, one should observe that the § 25 (*e*) disqualification then omitted the word "voluntarily." See *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. 593, 596-597 (1974).

[8] In his laconic rulings the judge cited § 1 (*r*) (2). His mention of "voluntary absence" is obscure but can be understood as a reflection of the strained view that an individual on requested maternity leave (even if for good reason) is still employed but voluntarily absent. (See note 11, *infra*.)

[9] It has not been contended that keeping insurance alive (or the like) during the leave period figures as "remuneration" under § 1 (*r*) (2).

any suitable work." Thence follows § 29 (*a*), as amended through St. 1973, c. 899, §§ 3, 3A: "An individual in total unemployment and otherwise eligible for benefits . . . shall be paid . . . [stated rates of compensation]."[10]

This employee was in total unemployment from the time of her termination (which counts retroactively as the start of the maternity leave) in the plain sense that she was out of a job and earning nothing. As it happened, she had another line of work suitable to her experience which she was capable of doing and available to do, and she had made serious efforts to find an opening. Thus a case was established under § 1 (*r*) (2), translating into unemployment benefits pursuant to § 29 (*a*), unless some supervening fact or concept stood in the way.

It is suggested that there cannot be total unemployment where an employment relationship persists to the extent of a maternity leave which looks ahead to the likelihood of the employee's being restored to regular work when the leave is over.[11] We reject so sweeping a proposition. It is not called for by the text, as "unemployment" can be understood, and, we suggest, more readily understood, in the practical sense. There are analogous cases where an employee is not shorn of unemployment benefits while out of work and seeking a suitable job, although, because of his continuing relationship with his employer, he has a good or even a perfect prospect of returning to his regular job when conditions change and there is work to do. See *Faria* v. *Director of the Div. of Employment Security,* 350 Mass. 397, 399 (1966). Cf. *President & Fellows of Harvard College* v. *Director of the Div. of Employment Security,* 376 Mass. 551, 552-553 (1978).

[10] See also G. L. c. 151A, § 24, as amended through St. 1977, c. 720, § 26, which reads in part: "An individual, in order to be eligible for benefits under this chapter, shall — . . . (*b*) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted." "Suitable employment" is dealt with in § 25 (*c*), as amended through St. 1980, c. 131, § 10.

[11] The argument can find some lodgment in § 25 (*e*) (1) in a play on the word "left" in the expression "left his work" preceding clause (1). See the statutory text at note 5 above.

Indeed for the immediate purpose of illustration we need not go beyond the ordinary situation of a layoff (see *President & Fellows* at 555): there may even be a contractual obligation to rehire as opportunities in the shop reopen.[12] The view which would take unemployment in its practical rather than abstract meaning supports the dominant policy of the statute which is simply to allow benefits to an employee who is unwillingly out of work and without current earnings and unable to find work appropriate to his employment capacity. See *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Security*, 333 Mass. 244, 248 (1955). The Director can point to decisions in which we have spoken in some form of words of termination or cessation of employment as a basis of obtaining unemployment compensation. Thus: "The granting of unemployment benefits . . . assumes some sort of severance of the employment relationship." *Cusack* v. *Director of the Div. of Employment Security*, 376 Mass. 96, 98 (1978). But the severance need not in every case be legally complete, it may be a severance sub modo as indicated.

The conclusions we reach on the present facts are strengthened by rulings elsewhere.[13]

We need not consider arguments which the employee seeks to draw from the repeal of § 27 of c. 151A. See *Dohoney* v. *Director of the Div. of Employment Security*,

---

[12] The employee cites by way of illustrative analogy the provision of § 1 (r) (2) that "[a]n individual who is not entitled to vacation pay from his employer shall be deemed to be in total unemployment during the entire period of any general closing of his employer's place of business for vacation purposes, notwithstanding his prior assent, direct or indirect, to the establishment of such vacation period by his employer."

[13] See *Overstrom* v. *Administrator, Unemployment Compensation Act*, 31 Conn. Supp. 240 (1974); *In re Gols' Claim*, 59 App. Div. 2d 994 (N.Y. 1977); *In re Evans' Claim*, 5 App. Div. 2d 737 (N.Y. 1957); *Dorsey* v. *Unemployment Compensation Bd. of Review*, 41 Pa. Commw. Ct. 479 (1979); *Tokar* v. *Unemployment Compensation Bd. of Review*, 35 Pa. Commw. Ct. 241 (1978). The authorities have not been uniform. Cf. *Southern Bell Tel. & Tel. Co.* v. *Kentucky Unemployment Ins. Comm'n*, 437 S.W.2d 775 (Ky. 1969); Annot., 51 A.L.R.3d 254, 261-275 (1973).

377 Mass. 333, 337 (1979). Nor need we reach the employee's argument that a decision against her herein would be offensive to a Federal enactment, 26 U.S.C. § 3304(a)(12) (1976) (Federal Unemployment Tax Act: qualification of State laws in regard to pregnancy). See *Brown* v. *Porcher*, 502 F. Supp. 946 (D.S.C. 1980).

Upon remand it may be necessary to fix the duration of benefits. See *Myerson* v. *Board of Review, Div. of Employment Security*, 43 N.J. Super. 196, 205 (1957).

The judgment of the Municipal Court of the City of Boston is reversed. Judgment is to be entered in that court affirming the decision of the board of review.

*So ordered.*