Murphy, Ernest B., J.
Plaintiff Gargano & Associates (“Gargano”) seeks judicial review, pursuant to G.L.c. 151B, §6 and G.L.c. 30A, §14, of afinal decision and order of the Massachusetts Commission Against Discrimination (the “MCAD”) dated October 18, 2004. The MCAD determined that Gargano had unlawfully discriminated against Joanne Nicklas (“Nicklas”) in violation of G.L.c. 15IB, §4(16). Gargano now moves this court for judgment on the pleadings under Mass.R.Civ.P. 12(c). Gargano contends that the decision of the MCAD hearing officer, Judith E. Kaplan, (“Hearing Officer”) was capricious and contrary to the applicable law; that the Hearing Officer erred in rejecting Gargano’s argument that Nicklas failed to mitigate her damages; and that the awards of damages for emotional distress, in the amount of $50,000.00, and a civil penalty, in the amount of $10,000.00, were not warranted based on the evidence introduced at the MCAD hearing. The defendant, MCAD, has filed an opposition to Gargano’s motion for judgment on the pleadings contending that the final order of the MCAD is supported by substantial evidence and that it be *233 affirmed in its entirety. For the reasons stated herein, Gargano’s motion for judgment on the pleadings is ALLOWED in part and DENIED in part.

BACKGROUND

Under G.L.c. 30A, §14, this Court limits its review to the facts contained in the administrative record.
Gargano & Associates is a law firm located in Cambridge, Massachusetts. Paul Gargano is the owner and sole shareholder of the firm. As of 1996, the firm employed eighteen people.
Nicklas began work at the firm on April 14, 1993 as a receptionist. She was promoted two weeks later to the position of paralegal. Her position was later referred to as "Administrative Assistant.” She was supervised by two attorneys at the firm, Paul Gargano and Nancy Hall, as well as the firm’s office manager. Nicklas was a full-time, salaried employee at the firm until January 1996.
Since childhood, Nicklas suffered from rheumatoid arthritis affecting her knees, spine, neck and elbow. She had also been treated for many years for sponylolysis that affected her back. Nicklas experienced regular pain when bending, kneeling, and squatting as a result of her illness.
During the early 1990s, Nicklas began to experience severe pain in her back that prevented her from sitting for any extended period of time. For a period of years, she was treated by her rheumatologist and a back specialist who employed the use of soft and hard back braces to alleviate Nicklas’ pain. The braces were worn over Nicklas’ clothes and were visible to her supervisors and co-workers. The back braces did not alleviate the pain and her doctors recommended she undergo surgery on her spine. Nicklas informed Gargano in early January 1996 that she would be undergoing back surgery.
Immediately after informing Gargano about the upcoming surgery, Nicklas received a memorandum changing her status from salaried to “hourly.” The memorandum stated that “This will alleviate any conflicts with your surgery/recovery schedule and payroll ...” A memorandum was drafted by Nicklas on January 17, 1996 memorializing her discussions with the office manger about her schedule in light of the surgery.
The surgery was performed on January 18, 1996. Nicklas was discharged from the hospital on January 22, 1996. On February 6, 1996, the office manager called Nicklas to find out when she would be able to return to work. Nicklas informed her that, upon her physician’s recommendation, she would initially have to maintain a part-time schedule and expected to receive clearance to return full-time after a following appointment with her doctor on March 4, 1996. Both agreed that Nicklas would return to work part-time on February 9, 1996. Nicklas did not directly discuss her part-time arrangement with Paul Gargano.
Nicklas worked four hours on Friday, February 9, 1996. The Hearing Officer credited her testimony that she was able to perform all of the essential functions of her job. The office manager, at that time, requested that Nicklas provide the office with a medical authorization to return to work with the four-hour per day restriction. Nicklas was unable to contact her doctor over the weekend and was sent home the following Monday after one hour of work. The office manager told her not to return until the medical authorization was received. On February 13, 1996, Nicklas’ surgeon faxed a note to the office manger stating that Nicklas was fit to work part-time. When Nicklas called to ensure the note was received, she was told that Mr. Gargano did not want her to return until she was able to work full-time. Nicklas informed the office manager that she expected to be cleared to work full-time after her March 4, 1996 follow-up appointment. She was told “Great. We look forward to it.”
On February 23, 1996, Nicklas received a letter from the firm terminating her employment. The letter stated:
It is with regret that I must inform you that Gargano & Associates has filled your full-time position as an Administrative Assistant. Due to our lack of administrative staff, it was imperative that someone be brought in immediately. However, if another full-time position should become available, we would encourage you to return to work for us. I speak for all of us when I say that it was great working with you and that you will be missed. (Decision of Hearing Officer, Exh. 4.)
After receiving the letter, Nicklas spoke to Paul Gargano by telephone. He first claimed no knowledge of the letter, and then remarked, “What good is four hours?,” and instructed Nicklas to speak to the office manager.
Nicklas was cleared by her doctors to work full-time on March 4, 1996. Nicklas did not provide a letter clearing her to return to Gargano because her employment had already been terminated.
After her termination, Nicklas actively sought comparable employment, attended job counseling and training sessions. In April 1996 Nicklas declined a position as a full-time legal assistant with a Boston law firm. Nicklas testified that she turned down the position because it paid less than she had received at Gargano and was otherwise not suitable. In August 1996, Nicklas was hired as a part-time medical secretary. Nicklas testified she took this job because the hourly rate equaled her compensation at Gargano and that she “immediately liked” her supervisor.
Nicklas filed a complaint with the MCAD on July 9, 1996, alleging Gargano unlawfully discriminated against her on the basis of handicap, in violation of G.L.c. 151B, §4(16). Nicklas alleged that Gargano refused to reasonably accommodate her after she *234 underwent back surgery, and instead terminated her employment. A hearing was held on June 23 and 24, 2003, before Judith E. Kaplan, an MCAD hearing officer. Nicklas testified about the alleged discriminating actions of Gargano, her lost wages, and the emotional distress she suffered as a result of the termination. The Hearing Officer issued a decision in favor of Nicklas, awarding her $26,253.80 in lost wages; $50,000.00 for emotional distress; and, $1,230.00 in out-of-pocket expenses. (Decision of Hearing Officer, pp. 13-14.) Hearing Officer Kaplan also ordered Gargano to pay $10,000.00 to the Commonwealth of Massachusetts as a civil penalty. (Id. at 23.) The decision of the Hearing Officer was affirmed by the full commission of the MCAD on October 18,2004.
On November 17, 2004, Gargano commenced this action in Superior Court challenging the decision of the MCAD as arbitrary and capricious, based on insufficient evidence, and otherwise not in accordance with applicable law.

DISCUSSION

I. Standard of Review

In reviewing an administrative appeal under chapter 30A, a court is constrained to limit its review to the administrative record. See She Enterprises, Inc. v. State Bldg. Code App. Bd., 20 Mass.App.Ct. 271, 273 (1985), review denied, 396 Mass. 1102. In so reviewing the record, the court is required to give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7), as amended by St. 1973, c. 1114, §3. See Raytheon Co. v. Dir. of the Div. of Employment Sec., 364 Mass. 593, 595 (1974). The court reviews the record “to determine whether the board applied correct legal principles in reaching its decision,” Guarino v. Dir. of the Div. of Employment Sec., 393 Mass. 89, 92 (1984), and it “may not substitute its own judgment for that of the administrative agency.” Southern Worcester County Reg. Voc. Sch. Dist v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982). A reviewing court is required to focus upon whether the administrative decision contains sufficient findings to demonstrate that correct legal principles were applied, and to determine whether those findings are supported by substantial evidence. Guarino, 393 Mass. at 92; Lycurgus v. Dir of the Div. of Employment Sec., 391 Mass. 623, 626-27 (1984). If an agency’s finding of fact is supported by “such evidence as a reasonable mind might accept as adequate to support a conclusion,” it will not be disturbed by a reviewing court. G.L. 30A, §1(6); Raytheon, 364 Mass. at 595. However, a court may vacate or modify an agency decision “if it determines that the substantial rights of any parly may have been prejudiced” because the decision was “unsupported by substantial evidence,” or was “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, §14(7).

II. Qualified Handicapped Person

Gargano contends that the decision of the MCAD that Nicklas was a “qualified handicapped person” was capricious and contrary to applicable law because the evidence before the Hearing Officer indicated that Nicklas was incapable of performing the essential functions of her job when she sought to return to part-time work after her surgery.
It is unlawful “for any employer, personally or through an agent, to dismiss from employment . . . because of [their] handicap, any person alleging to be a qualified handicapped person . . . unless the employer can demonstrate that the accommodation required to be made . . . would impose an undue hardship to the employer’s business.” G.L.c. 151B, §4(16). A “qualified handicapped person” is defined as “a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap.” G.L.c. 151B, §1(16). The burden was on Nicklas to demonstrate to the MCAD that she was a qualified handicapped person. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997).
Nicklas met this burden. Based on the testimony of the parties and documentary evidence, the Hearing Officer found the following: that Nicklas returned to work on February 9, 1996 and worked for four hours performing the essential functions of her job; that Nicklas returned to work on February 12, 1996 and performed her job duties until the office manager sent her home because she did not have a note from her doctor certifying her fitness to return to work with restricted hours; and that on February 13, 1996 Nicklas’ surgeon faxed to the office manager a note stating that Nicklas was fit to work part-time. The record, therefore, reflects that there was substantial evidence to support the hearing officer’s conclusion that Nicklas was capable of performing the essential functions of her job with the reasonable accommodation of a part-time schedule.
Gargano further contends that the Hearing Officer’s determination was capricious and contrary to applicable law because the record indicates that Paul Gargano, the owner and sole shareholder of the employer, observed Nicklas in severe pain after one hour of work on February 12, 1996. (Decision of Hearing Officer, p.9.) This single circumstance, however, does not so detract from the weight of the favorable evidence showing Nicklas was capable of performing her job with the reasonable accommodation as to render the Hearing Officer’s conclusion arbitrary or contrary to law. This Court must respect the determination of the MCAD where it “has, in the discretionary exercise of its expertise, made a ‘choice between [. . .] conflicting views,’ and its selection reflects reasonable evidence . . .” Lisbon v. Contributory Ret App. Bd., 41 Mass.App.Ct. 246, 257 (1996) (citations omitted). *235 Here, the Hearing Officer considered Gargano’s observations in context with the other evidence introduced at the hearing and made the determination that Nicklas was capable of performing her essential job duties with reasonable accommodation. The Court, therefore, affirms the MCAD determination that Nicklas was a “qualified handicapped person” entitled to “reasonable accommodation” for her handicap.

III. Mitigation of Damages

Gargano contends that the determination of Hearing Officer Kaplan that Nicklas properly mitigated her damages is arbitraiy because the Hearing Officer found that Nicklas rejected an offer of a job as a full-time legal assistant in a Boston law firm in April 1996.
The burden was on Gargano to demonstrate to the MCAD that Nicklas failed to mitigate her damages. Buckley Nursing Home v. Mass. Comm’n Against Discrimination, 20 Mass.App.Ct. 172, 185 (1985). Gargano bore the burden to demonstrate to the MCAD that “one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment”; that Nicklas “made no attempt to apply for any such job”; and, that “it was reasonably likely that [Nicklas] would obtain one of those comparable jobs.” Id.
The record supports the Hearing Officer’s conclusion that Gargano did not meet this burden. The Hearing Officer credited Nicklas’ testimony that she declined the position because of its low pay and its unsuitability to her needs. The fact that the employment offer involved work as a full-time legal assistant in a Boston law firm, not part-time, and that Nicklas took a part-time secretarial position in August 1996 adds to the ample support underlying the Hearing Officers determination that the April 1996 position was not “comparable” to Nicklas’ prior job with reasonable accommodation. Because it is supported by substantial evidence in the record, this Court affirms the MCAD determination that Nicklas properly mitigated her damages of lost wages.

IV. Emotional Distress Damages

Gargano contends that the award of $50,000.00 in damages for emotional distress is not supported by substantial evidence where there was no expert medical testimony, where Hearing Officer Kaplan found that Nicklas was “angry, distressed and demoralized” as a result of being terminated, and where Nicklas saw a social worker and attended a stress management course.
“Emotional distress damage awards, when made, should be fair and reasonable, and proportionate to the distress suffered.” Stonehill College v. Mass. Comm’n Against Discrimination, 441 Mass. 549, 576 (2004) (emphasis added). To justify an award, the evidence of emotional distress must be sufficiently linked to the established instance of unlawful discrimination. Id. A finding of discrimination, by itself, is not sufficient to infer or presume emotional distress. Id. Evidence of a physical manifestation of the emotional distress, or expert testimony is beneficial but not necessary to justify an award of damages for emotional distress. Id.
Additionally, “[a]n award must rest on substantial evidence and its factual basis must be made clear on the record.” Stonehill College v. Mass. Comm’n Against Discrimination, 441 Mass. 549, 576 (2004). In measuring the emotional distress damages, factors that should be considered include: “(1) the nature and character of the alleged harm; (2) the severity of the harm; (3) the length of the time the complainant has suffered and reasonably expects to suffer; and, (4) whether the complainant has attempted to mitigate the harm (e.g., by counseling or by taking medication).” Stonehill College, 441 Mass. at 576.
This Court finds that there was substantial evidence in the record to support MCAD’s determination that damages for emotional distress were warranted. However, the Court further finds that the factual basis for emotional distress damages contained in the record does not justify the $50,000.00 amount awarded by MCAD and reduces the award accordingly.
The recent case of School Committee of Norton v. Massachusetts Commission Against Discrimination, 63 Mass.App.Ct. 839 (2005), provides a useful comparison. There, the Massachusetts Appeals Court affirmed an award of $50,000.00 for emotional distress damages assessed by the MCAD where a cafeteria worker, terminated from her employment by the school committee of Norton because of a permanent medical restriction, had presented evidence that she loved her job; the termination of her employment was devastating and humiliating; the termination caused her to suffer from panic attacks; the termination caused her to lose her appetite, her hair, and twenty percent of her body weight; and, she saw a psychologist regarding the termination until her medical insurance benefits ran out. Id. at 849.
The facts of that case, however, are distinct and patently more severe than the facts of the present case. Here, the Hearing Officer found that Nicklas was “angry, distressed and demoralized” as a result of being terminated, that Nicklas saw a social worker, and that Nicklas attended a stress management course. The Hearing Officer also credited Nicklas’ testimony that she felt that she had been “kicked in the stomach, ” felt anxious about having lost her health insurance, and was overwhelmed at the prospect of looking for work. Unlike in School Committee, however, there is no evidence of any physical manifestation of Nicklas’ emotional distress, such as panic attacks, loss of appetite, hair or body weight. See id. at 849. While evidence of a physical manifestation of emotional distress is not necessary for an award of dam *236 ages, this Court finds that, given the precedent of School Committee, some additional record evidence is necessary to justify an award of $50,000.00. The record evidence that the termination of Nicklas’ employment upset her, that she saw a social worker, and attended a stress management course, does not provide a sufficient basis for the amount awarded by MCAD given the factors set out by the Supreme Judicial Court in Stonehill College, 441 Mass. at 576, and the $50,000.00 award upheld in School Committee, 63 Mass.App.Ct. at 849.
The Court finds substantial evidence to support the MCAD’s determination that emotional distress damages were warranted, but also finds that the record lacks factual support for the $50,000.00 amount awarded. As a result, the amount of the award is reduced to $10,000.00, an amount the Court considers appropriate and justifiable given the record facts and equities of the case.

V. Civil Penalty

Lastly, Gargano contends that the award of a civil penally in the amount of $10,000.00 was not warranted under the circumstances because Gargano has never before been found to have committed a violation of G.L.c. 15 IB and there is no other finding of fact to support such a severe civil penalty.
The MCAD has broad discretion to fashion remedies which achieve the goals of G.L.c. 151B. See Conway v. Electro Switch Corp., 402 Mass. 385, 387 (1988); Chief Justice for the Admin. of the Trial Court v. Mass. Comm’n Against Discrimination, 439 Mass. 729, 736-37 (2003). G.L.c. 151B, §5 provides that, “(i]f, upon all the evidence at any such hearing, the commission shall find that a respondent has engaged in any such unlawful practice, it may, in addition to any other action which it may take under this section, assess a civil penalty against the respondent; (a) in an amount not to exceed $10,000 if the respondent has not been adjudged to have committed any prior discriminatory practice.” (Emphasis added.)
While G.L.c. 15 IB, §5 does not limit the imposition of a civil penalty to situations where a respondent has unlawfully discriminated more than once, such penalties must rest on evidence in the record. See G.L.c. 30A, §14(6). The Court must ensure, based on the content of the record, that the substantial rights of a party are not prejudiced because the decision was “unsupported by substantial evidence,” or was “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law,” G.L.c. 30A, §14(7), and may accomplish this though the authority granted it under G.L.c. 30A, §14(6). See Northeast Met. Reg. Voc. School Distr. Comm. v. Mass. Comm. Against Discrim, 35 Mass.App.Ct. 813, 818 (1994). After review of the administrative record, the Court finds that the Hearing Officer abused her discretion in assessing a $10,000.00 penalty against a small business that had no prior record of discrimination, and where the record lacked substantial evidence to support punitive measures to prevent future unlawful acts.
The purpose of punitive damages for discriminatoiy conduct, be they in the form of a civil penalty or jury award, is “to punish the defendant and ‘to deter future acts of illegal discrimination’ . . .” Bourne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 321 (2003). In reviewing such awards, it is appropriate for a court to compare the punitive damages assessed against “the civil penalties authorized or imposed in comparable cases.” See id. at 322.
The Hearing Officer made no findings that Gargano had engaged in behavior so egregious as to warrant a finding that future misconduct was likely. The Hearing Officer’s decision to assess the maximum penally allowed against a business employing only eighteen individuals, with no prior record of unlawful discrimination, finds no factual nexus in the record. Affirming the Hearing Officer’s decision that Gargano’s actions warranted the maximum penalty allowed to deter future misconduct would be inequitable under the circumstances. For these reasons, the Court finds that the Hearing Officer abused her discretion in assessing the maximum allowable penalty against Gargano and vacates the civil penalty that was ordered to be paid to the Commonwealth in the amount of $10,000.00. Under the circumstances and the equities, any payment by Gargano is more appropriately directed toward the victim of its unlawful conduct: Ms. Nicklas.

ORDER

For the reasons stated herein, plaintiff s motion for judgment on the pleadings is ALLOWED in part and DENIED in part.
Gargano’s motion to vacate MCAD’s determination that Nicklas was a “qualified handicapped person” is DENIED. The MCAD determination that Nicklas was a “qualified handicapped person” and was entitled to reasonable accommodation for her handicap is affirmed.
Gargano’s motion to vacate MCAD’s determination that Nicklas properly mitigated her damages is DENIED. MCAD’s determination that Nicklas is entitled to $26,253.80 in lost wages with applicable interest, and $1,230.00 in expenses with interest, is affirmed.
Gargano’s motion to vacate the MCAD’s $50,000.00 award to Nicklas for emotional distress is ALLOWED in part and DENIED in part. The MCAD determination that emotional distress damages were warranted under the circumstances is affirmed. The $50,000.00 amount rewarded was not supported by substantial evidence in the record, and is accordingly reduced to $10,000.00.
Gargano’s motion to vacate the $10,000.00 civil penally assessed by MCAD under G.L.c. 15IB, §5 is ALLOWED.