388 Mass. 201 (1983)
445 N.E.2d 1068
ANGELIKI MANIAS
vs.
DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY & another.[1]
Supreme Judicial Court of Massachusetts, Suffolk.
November 5, 1982.
February 16, 1983.
Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.
Paul R. Collier, III, for the plaintiff.
George J. Mahanna, Assistant Attorney General, for Director of the Division of Employment Security.
ABRAMS, J.
This appeal challenges the decision of the board of review (board) of the Division of Employment Security, denying unemployment benefits to the plaintiff. The decision was affirmed by a judge of the Boston Municipal *202 Court. Pursuant to G.L.c. 151A, § 42, this case came here for direct review with a report from that court. We reverse.
We summarize the review examiner's findings of fact.[2] The claimant was employed by a Boston restaurant as a laundry worker for approximately one year prior to March 31, 1978. For a brief period the claimant worked from 10 A.M. to 7 or 8 P.M. The claimant's work schedule was then changed to 7 A.M. to 7 P.M., which included a great deal of overtime. The restaurant began to reduce the claimant's work schedule, so that by March, 1978, her hours had been shifted to 11 A.M. to 6 or 7 P.M. The claimant was requested to work until 8 or 9 P.M., but she objected because the extra hours interfered with her family and homemaking obligations.[3]
The review examiner determined that the claimant left work because her request for a change in the schedule was denied. The review examiner concluded that "the claimant's request was not for an urgent, compelling, nor necessitous reason but was based on personal reasons, [and that] such leaving is voluntary without good cause attributable to the employing unit within the meaning of Section 25 (e) (1) of the Law." The claimant appealed.
Manias claims that her leaving was for "good cause attributable to the employing unit," because the new hours resulted in a substantial wage reduction and because her family obligations required her to reject the employment. She contends that her reasons were urgent, compelling, and necessitous. Hence, she argues, it was error to deny her unemployment benefits.
Where the basis of employment includes "the guarantee of overtime ... an employee can leave his job with good cause [attributable to the employing unit] when the employer eliminates his overtime." Tombigbee Lightweight Aggregate Corp. v. Roberts, 351 So.2d 1388, 1390 (Ala. Civ. App. 1977). See Ship Inn, Inc. v. Unemployment *203 Compensation Bd. of Review, 50 Pa. Commw. 292, 295 (1980).
"An employer cannot defeat the payment of unemployment benefits by offering to [alter hours and then] reemploy claimants at sharply reduced wages. A substantial decline in wages may render a worker's job unsuitable," and may be viewed as good cause for leaving employment. Graves v. Director of the Div. of Employment Sec., 384 Mass. 766, 767-768 (1981). "Any other result would, in our opinion, sanction a situation whereunder the employer could entirely foreclose the employee's right to benefits by the simple expedient of reducing the employee's wages to near benefit level instead of discharging or releasing the employee outright thereby at one and the same time compelling his resignation and rendering him ineligible for the benefits provided for in the act." Robertson v. Brown, 139 So.2d 226, 229 (La. Ct. App. 1962). Cf. President & Fellows of Harvard College v. Director of the Div. of Employment Sec., 376 Mass. 551, 556 (1978) (full-time workers entitled to reject offered part-time work as unsuitable under G.L.c. 151A, § 25 [c] [4], which resulted in a thirty per cent or more reduction in hours and wages); Graves v. Director of the Div. of Employment Sec., 384 Mass. 766, 767 n. 2 (1981) (forty per cent reduction in wages for piece work prior to layoff could render recall an offer of unsuitable employment).
In order to demonstrate the requisite "good cause attributable to the employing unit," under G.L.c. 151A, § 25 (e) (1), Manias must prove that her employer's reduction of her hours, including accustomed overtime, resulted in a substantial wage reduction. "The burden of proof as to all aspects of eligibility for unemployment benefits, including the burden of establishing good cause, rests with the worker." Sohler v. Director of the Div. of Employment Sec., 377 Mass. 785, 788 n. 1 (1979). The review examiner did not make any findings on Manias's claim that her accustomed wages were substantially reduced by the change in hours,[4] *204 thereby giving her good cause to leave her job. We conclude that the failure to consider Manias's claim of good cause was an error of law.
Relying on Conlon v. Director of the Div. of Employment Sec., 382 Mass. 19, 22-23 (1980), Manias also asserts that her leaving was involuntary because the new hours did not permit her to meet her child care and family responsibilities.[5] A claimant is entitled to unemployment compensation under G.L.c. 151A, § 24 (b), even though he or she restricts his or her availability for work to certain specific times, due to child care and domestic responsibilities. Id.
Conlon did not address the question whether child care demands could constitute urgent and compelling reasons for leaving a job, rendering an employee's resignation involuntary under § 25 (e) (1). However, we have said that "a person who is forced to leave work because of compelling personal circumstances has left work involuntarily and is not subject to temporary disqualification under G.L.c. 151A, § 25 (e) (1)." Dohoney v. Director of the Div. of Employment Sec., 377 Mass. 333, 335 (1979). Director of the Div. of Employment Sec. v. Fingerman, 378 Mass. 461, 463-464 (1979). Since domestic responsibilities can entitle a claimant to reject certain employment situations as unacceptable and restrict her work availability under § 24 (b), we conclude that those same responsibilities also may constitute urgent and compelling reasons which make a resignation involuntary under G.L.c. 151A, § 25 (e) (1). See Conlon, supra at 21 n. 1.[6]
There was evidence which, if believed, could support Manias's claims. However, the review examiner did not *205 make any subsidiary findings of fact on either issue. "Whether this evidence was credible ... was for the review examiner, and not for this court, to determine. But since he made no findings on this point, `[o]n the record before us, we cannot determine whether the [examiner] disbelieved those portions of the evidence on which no subsidiary findings were made, or believed them but considered them not determinative of the ultimate issue.'" Smith v. Director of the Div. of Employment Sec., 376 Mass. 563, 565-566 (1978), quoting Maryland Cas. Co. v. Commissioner of Ins., 372 Mass. 554, 567 (1977). "An administrative agency must make findings on each factual issue essential to its decision." Reavey v. Director of the Div. of Employment Sec., 377 Mass. 913, 914 (1979).
It is the agency's responsibility to weigh the evidence, find the facts, and decide the issues. Graves v. Director of the Div. of Employment Sec., 384 Mass. 766, 769 (1981). "It is ... the function of the board and not a judge to make findings of fact in [Employment Security] case[s]." White v. Director of the Div. of Employment Sec., 382 Mass. 596, 599 (1981).[7]
"The statutory exception to disqualification sets a standard calling for an exercise of judgment which is not purely factual. Such a determination, involving the application of the standard to the facts found, brings into play the experience, technical competence, and specialized knowledge of the agency." Director of the Div. of Employment Sec. v. Fingerman, 378 Mass. 461, 463 (1979). Thus, "[i]n the absence of any finding on the material factual issue[s] ..., the agency's decision cannot stand even if supported by substantial evidence." Torres v. Director of the Div. of Employment Sec., 387 Mass. 776, 779 (1982).
Although there was substantial evidence to support Manias's claims, neither the review examiner nor the board *206 made findings on the two issues raised by Manias. We therefore reverse the judgment of the Boston Municipal Court, and order that a judgment be entered remanding this matter to the Division of Employment Security. On remand, the board may determine that Manias's leaving was involuntary by making findings based on the evidence in the record, or on additional evidence. Alternatively, the board of review may send this matter back to the review examiner for findings and a determination on the evidence in the record or for an evidentiary hearing on the issues raised.
So ordered.
NOTES
[1] Durgin-Park, Inc.
[2] The board adopted the findings of the review examiner, and we therefore treat them as the findings of the board.
[3] The claimant has two children.
[4] Manias claims that the change in hours resulted in approximately a forty per cent wage reduction.
[5] Manias stated that one of her two children was a Down's syndrome child who recently had undergone heart surgery. The review examiner made no finding on Manias's family obligations and responsibilities.
[6] Manias, of course, bears the burden of proving that her child care and family obligations were so compelling as to render her resignation involuntary. See Sohler v. Director of the Div. of Employment Sec., 377 Mass. 785, 788 n. 1 (1979). See also Conley v. Director of the Div. of Employment Sec., 340 Mass. 315 (1960).,
[7] Neither the review examiner nor the board is required to believe the evidence "even though it [is] wholly uncontradicted." Lenn v. Riche, 331 Mass. 104, 111 (1954). See P.J. Liacos, Massachusetts Evidence 129-131 (5th ed. 1981).