66 Mass. App. Ct. 759 (2006)                 759

Norfolk County Retirement System *v.* Director of the Dept. of Labor and Workforce Development.

# NORFOLK COUNTY RETIREMENT SYSTEM *vs.* DIRECTOR OF THE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT & others.[1]

No. 05-P-146.

Norfolk. November 2, 2005. - July 19, 2006.

Present: LENK, DREBEN, & GREEN, JJ.

*Employment Security,* Eligibility for benefits, Good cause, Voluntary unemployment, Availability for work. *Administrative Law,* Substantial evidence.

Where the decision of a review examiner of the Division of Employment and Training (division) granting unemployment compensation benefits to a claimant on the ground that her departure from work was rendered involuntary by "urgent, compelling, and necessitous reasons" under G. L. c. 151A, § 25(*e*)(1), failed to address whether the claimant had acted reasonably, based on pressing circumstances, in leaving her job because of the conflict between her work hours and her child care responsibilities, this court remanded the matter to the division's board of review for further proceedings. [763-770]

CIVIL ACTION commenced in the Stoughton Division of the District Court Department on June 27, 2003.

The case was heard by *Francis T. Crimmins,* J.

*Andrew Lawlor* for the claimant.

*Thomas W. Colomb* for the employer.

LENK, J. After being employed by Norfolk County for sixteen years, Pamela Masson-Smith (claimant) left her job as a book-keeper with the Norfolk County Retirement System (employer)

---

[1]Director of the Division of Employment and Training, board of review of the Division of Employment and Training, and Pamela M. Masson-Smith. By St. 2003, c. 26, § 581, the duties of the Division of Employment and Training in the Department of Labor and Workforce Development were assigned to the Division of Unemployment Assistance within the Department of Labor. By St. 2004, c. 149, § 184, those duties were assigned to the Division of Unemployment Assistance within the Department of Workforce Development.

at the end of 2002. She did so solely because of the conflict between her work hours and her child care responsibilities. Her application for unemployment benefits was initially denied by the Division of Employment and Training (division) because the division viewed her departure as voluntary and without good cause attributable to her employer. She appealed, and after an evidentiary hearing at which the claimant and her supervisor testified to essentially undisputed facts, the review examiner determined that the claimant was entitled to benefits because her departure from work was rendered involuntary by "urgent, compelling and necessitous reasons within the meaning of [G. L. c. 151A, §] 25(*e*)(1)." The division's board of review denied the employer's application for review, thus adopting the review examiner's decision. See G. L. c. 151A, § 41(*c*). The employer's appeal to the District Court met with more success, with the judge setting aside the board of review's decision as unsupported by substantial evidence. The claimant now appeals from the judge's decision.

The uncontroverted facts are these. The claimant worked as a full-time employee of the county for sixteen years, the last four as a bookkeeper for the defendant employer. She was valued as an employee who did "good work." While employed by the county, the claimant also worked nights for more than ten years waitressing at different restaurants.

In connection with the birth of her first child, the claimant requested and was granted a paid six-month maternity leave, which began November 18, 2001. She returned to her job part-time in April, 2002, six weeks earlier than required, in order to accommodate her employer's needs; she worked two days per week until mid-May, when her maternity leave was exhausted. For a brief time after that, she resumed her former full-time schedule (forty hours per week, Monday through Friday, 8:00 A.M. to 4:00 P.M.) but could not sustain it. Because of child care responsibilities for her six month old daughter, she asked for a three day per week schedule. The employer reluctantly acquiesced on a temporary basis, choosing to pay the claimant as a full-time employee while deducting two days a week from her accrued vacation time. In the fall, when the claimant's accrued vacation time was nearly used up, the employer advised

66 Mass. App. Ct. 759 (2006)                             761

Norfolk County Retirement System *v.* Director of the Dept. of Labor and Workforce Development.

her that she would soon be required to return to a full-time schedule.

The claimant told her employer that she could not work her former full-time schedule because she was unable to find suitable day care for her baby for more than three days a week. Her husband was a self-employed electrician working days who was unavailable until late in the afternoons to care for their child. Her mother and mother-in-law also worked, as did close friends, and all were unavailable. The claimant's sister was willing to watch the baby but, because of her own child care obligations and pregnancy, could not do so more than three days a week. The claimant also looked into commercial day care,[2] but in addition to being unable to find affordable care, she did not want to put her then ten month old child in care of that type: "She was too little." In addition, the claimant had a one-hour commute each way between her home in Mendon and her job in Canton.

The claimant offered to work three days a week at her employer's office and two other days from home, or in the evenings, or on weekends. The employer declined. Feeling that she "had to leave" but "didn't want to leave" her job so that she could take care of her child, the claimant gave her employer six weeks' notice and left on November 29, 2002.[3]

In concluding that the claimant was entitled to benefits under G. L. c. 151A, § 25(*e*)(1), the review examiner reasoned as follows:

> "The claimant was not discharged. She initiated this separation. Whether she is entitled to benefits will therefore be determined in accord with the provisions of § 25(*e*)(1). Section 25(*e*)(2) is not applicable in this case.

> "Under § 25(*e*)(1), the claimant has the burden of

---

[2]The claimant provided no details as to what commercial day care alternatives she had explored or as to the quality, availability, and cost of local day care for infants. The employer, however, did not cross-examine the claimant as to such matters and did not argue the point to the review examiner.

[3]Thereafter the claimant sought full-time work as a waitress or as a clerical person with a flexible schedule that would not require her to work daytime hours more than three weekdays per week.

proof. She must show by substantial and credible evidence either that her voluntary leaving was for good cause attributable to the employer or that her leaving was rendered involuntary due to urgent, compelling and necessitous reasons.

"It is clear that the employer acted reasonably in this case. The employer has the right to operate its business as it sees fit. It hired the claimant to fill a full time position. It was under no obligation to modify the hours of that position to accommodate the claimant's changed circumstances. Although the employer chose to modify her hours for a period of time, it was not required to continue to do so. The parties agreed that no new contract of hire was negotiated when the claimant's hours were temporarily changed; no new promises were made. The claimant's leaving was not for good cause attributable to the employer within the meaning of § 25(*e*)(1).

"The claimant did meet her burden of proof in showing that her leaving was rendered involuntary due to urgent, compelling and necessitous reasons. The claimant was unable to locate any daycare that was satisfactory within her personal standards that would have permitted her to work the full time hours the employer demanded that she work. There were no alternative shifts or flex hours within the employer's organization that would have permitted her to put in a full time workweek. Her leaving work was therefore rendered involuntary due to urgent, compelling and necessitous reasons within the meaning of § 25(*e*)(1).

"This review examiner did not feel it was necessary to address the issue of whether the claimant had a right to make the choices that she made. Whether the claimant has the right to restrict the hours when she makes herself available to work is an independent and separate issue from the one posed by the determination at hand. See the second 'Note to Local Office' below.[4]

---

[4]In the "Note to Local Office," the review examiner indicated that the claimant had testified to self-imposed limits on availability that prevented her from accepting employment requiring her to work a daytime shift more than three weekdays per week. The review examiner referred to the local office for

"The claimant is therefore not subject to disqualification and she is entitled to benefits."

On appeal, the claimant maintains that the District Court judge erred in concluding that the board of review's decision was unsupported by substantial evidence. She contends that the review examiner had before him uncontroverted evidence that she left her job for compelling personal reasons — to fulfil child care responsibilities — after having first taken reasonable steps to preserve her employment, which the review examiner was entitled to accept as such. This met her burden of proving that her work separation was involuntary and that she was entitled to benefits.

The employer takes the opposite view, maintaining that the claimant had not shown her work separation to be anything but a purely voluntary choice on her part, a product of her subjective belief that commercial day care was not suitable in the circumstances and a mere personal preference that her baby be cared for by family members or close friends. The employer contends that the claimant failed to show that she "had no choice but to leave work" and did not offer "objectively reasonable" reasons of an urgent, compelling or necessitous nature for leaving her job. In view of this, as well as the review examiner's failure to make findings as to the "objective reasonability" of the claimant's conduct, the employer argues that the judge was correct to set aside the review examiner's decision as being unsupported by substantial evidence. The employer also contends that, even if we conclude that the review examiner's decision as to G. L. c. 151A, § 25(*e*)(1), was supported by substantial evidence, it nonetheless cannot stand because the review examiner failed to address the question of the claimant's availability for work under G. L. c. 151A, § 24(*b*), given the restrictions she has placed on her work hours.

*Discussion.* Our review of the board's decision must "give due weight to the [agency's] experience, technical competence, and specialized knowledge[,] . . . as well as to the discretionary authority conferred upon it." *O'Brien* v. *Director of the Div.*

investigation and determination the matter of the claimant's eligibility under G. L. c. 151A, § 24(*b*).

*of Employment Security,* 393 Mass. 482, 486 (1984), quoting from G. L. c. 30A, § 14(7). We do not act as a fact finder in employment security cases, because it remains "the agency's responsibility to weigh the evidence, find the facts, and decide the issues." *Manias* v. *Director of the Div. of Employment Security,* 388 Mass. 201, 205 (1983). See *Guarino* v. *Director of the Div. of Employment Security,* 393 Mass. 89, 92 (1984). Our limited function is to determine whether the board of review applied correct legal principles in reaching its decision, whether the decision contains sufficient findings to demonstrate that the correct legal principles were applied, and whether those findings were supported by substantial evidence within the meaning of G. L. c. 30A, § 14(7)(*e*). See *Guarino* v. *Director of the Div. of Employment Security, supra* at 92-93; *O'Brien* v. *Director of the Div. of Employment Security,* 393 Mass. at 485.

We begin by reviewing the fundamental legal principles the board of review must apply. The unemployment compensation statute in general, and the element of voluntariness included in G. L. c. 151A, § 25(*e*)(1), in particular, serve the purpose of "avoiding temporary disqualification for persons who for compelling personal reasons are forced to give up an otherwise available position. . . . The grant of benefits to unemployed persons is not premised on the concept of employer fault." *Raytheon Co.* v. *Director of the Div. of Employment Security,* 364 Mass. 593, 596 (1974). "The broader purpose of the law is to provide temporary relief for those who are realistically compelled to leave work through no 'fault' of their own, whatever the source of the compulsion, personal or employer-initiated." *Ibid.* The "dominant policy of the statute . . . is simply to allow benefits to an employee who is unwillingly out of work and without current earnings and unable to find work appropriate to his employment capacity." *Director of the Div. of Employment Security* v. *Fitzgerald,* 382 Mass. 159, 164 (1980). The statute itself provides that it is to "be construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." G. L. c. 151A, § 74, inserted by St. 1949, c. 290. *Reep* v. *Commissioner of the Dept. of Employment & Training,* 412 Mass. 845, 847 (1992).

Accordingly, a "wide variety of personal circumstances," *ibid.*, have been recognized as constituting "urgent, compelling and necessitous" reasons under G. L. c. 151A, § 25(*e*)(1), which may render involuntary a claimant's departure from work. These include family ties that cause a married spouse or nonmarital partner to leave her employment in order to relocate with her spouse or partner, see, e.g., *Director of the Div. of Employment Security* v. *Fingerman*, 378 Mass. 461, 464 (1979); *Reep* v. *Commissioner of the Dept. of Employment & Training*, *supra* at 849-852; pregnancy or pregnancy-related disability, see, e.g., *Dohoney* v. *Director of the Div. of Employment Security*, 377 Mass. 333, 335-336 (1979); *Director of the Div. of Employment Security* v. *Fitzgerald*, *supra* at 161 & n.6; and domestic responsibilities including child care, see, e.g., *Manias* v. *Director of the Div. of Employment Security*, 388 Mass. at 204.

In determining, pursuant to G. L. c. 151A, § 25(*e*), whether a claimant's personal reasons for leaving a job are so compelling as to make the departure involuntary, the inquiry proceeds on a case-by-case basis. "The nature of the circumstances in each individual case, the strength and the effect of the compulsive pressure of external and objective forces must be evaluated, and if they are sufficiently potent, they become relevant and controlling factors." *Reep* v. *Commissioner of the Dept. of Employment & Training*, *supra* at 848, quoting from *Raytheon Co.* v. *Director of the Div. of Employment Security*, 344 Mass. 369, 373-374 (1962), quoting from *Sturdevant Unemployment Compensation Case*, 158 Pa. Super. 548, 557-558 (1946). There should not be "too narrow a view [taken] of the factors entering into the determination whether reasons are 'urgent, compelling and necessitous' within the meaning of the statute." *Director of the Div. of Employment Security* v. *Fingerman*, 378 Mass. at 464. Benefits are not to be denied to those "who can prove they acted reasonably, based on pressing circumstances, in leaving employment." *Reep* v. *Commissioner of the Dept. of Employment & Training*, *supra* at 851.

Because G. L. c. 151A, § 25(*e*), third par., as amended through St. 1990, c. 177, § 280, provides that a claimant is not to be disqualified from receiving benefits pursuant to § 25(*e*)(1)

if she "establishes to the satisfaction of the commissioner that [her] reasons for leaving were for such an urgent, compelling and necessitous nature as to make [her] separation involuntary," considerable deference is accorded the agency's determination in this regard. "The statutory exception to disqualification sets a standard calling for an exercise of judgment which is not purely factual. Such a determination, involving the application of the standard to the facts found, brings into play the experience, technical competence, and specialized knowledge of the agency." *Director of the Div. of Employment Security* v. *Fingerman, supra* at 463.

Prominent among the factors that will often figure in the mix when the agency determines whether a claimant's personal reasons for leaving a job are so compelling as to make the departure involuntary is whether the claimant had taken such "reasonable means to preserve her employment" as would indicate the claimant's "desire and *willingness to* continue her employment." *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. at 597-598. See *Dohoney* v. *Director of the Div. of Employment Security, supra* at 336. Contrary to the employer's suggestion, it is not necessary that a claimant seeking to prove that she left her job involuntarily establish that she had "no choice to do otherwise." "This statement disregards our cases which recognize that unemployment compensation benefits should not be denied to one who leaves her employment for what she reasonably believes are compelling reasons . . . ." *Fergione* v. *Director of the Div. of Employment Security*, 396 Mass. 281, 284 (1985). The relevant standard is the claimant's "reasonable belief," *ibid.*, and "ordinarily the agency must make findings as to the reasonableness of a claimant's belief that she left her employment for a compelling reason." *Leone* v. *Director of the Div. of Employment Security*, 397 Mass. 728, 732 n.4 (1986).

Turning to the matter at hand, the District Court judge concluded, without explanation, that the board of review's decision was unsupported by substantial evidence. The employer echoes this view, suggesting that the claimant failed to meet her purported burden of establishing that, before leaving her job, she had sufficiently explored commercial day care options. The

66 Mass. App. Ct. 759 (2006)    767

Norfolk County Retirement System *v.* Director of the Dept. of Labor and Workforce Development.

employer dwells on the claimant's testimony that she preferred to have her baby cared for by family and friends because she thought the child "too little" for commercial day care. Downplaying the claimant's testimony, albeit of a general nature, see note 2, *supra*, that she had looked into commercial day care and found it very expensive, the employer instead maintains that the claimant "categorically refused to consider commercial day care for her child . . . and insisted on remaining home with the child at all times when family members were unavailable" and, further, that her "self imposed refusal to consider commercial day care" before leaving her job was a decision based on "preference, not economic necessity." Characterizing this variously as a "subjective" decision based on the claimant's "child rearing preferences, not economics," the employer urges that her conduct cannot be thought "objectively reasonable" because, by not pursuing — and, if available, securing — a commercial day care alternative, the claimant has simply not shown that she was "compelled" to stay home with her child and that she had "no choice but to leave work."[5]

There is a sense in which many of the "personal circumstances" recognized as constituting "urgent, compelling and necessitous" reasons under G. L. c. 151A, § 25(*e*), have subjective aspects and implicate personal preferences that may trump purely economic considerations. When, for example, a married spouse or nonmarital partner leaves his or her job to relocate in order to remain with the spouse or partner who has moved, the choice is a personal one, subjectively valuing the relationship over the employment situation, even if a lucrative one. When the work one does is perceived as endangering one's unborn child, the mother's decision to leave her job elevates the well-being of the fetus over the paycheck. How, responsibly, to meet

[5]The employer calls our attention in this regard to decisions in certain other jurisdictions that have held claimants ineligible for benefits who failed to seek and, if available, secure commercial child care before resigning their jobs. We observe that State statutes and decisional law differ considerably as to the extent to which family responsibilities are recognized as relevant factors in ascertaining eligibility for unemployment benefits. This being said, the decisions cited "are distinguishable and of no assistance in resolving the issue. We shall not belabor this opinion by discussing the decisions." *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 725 n.6 (2000). Neither our statute nor our case law have conditioned eligibility in this fashion.

the important obligation of caring for one's child is no different in implicating personal reasons and personal choices.

The key, for benefit eligibility, lies not in characterizing the decision as personal or subjective rather than as economic or objective, but in ascertaining whether the claimant "acted reasonably, based on pressing circumstances, in leaving employment." *Reep* v. *Commissioner of the Dept. of Employment & Training, supra* at 851. Not all personal reasons involving perceived family responsibilities will be seen as creating "sufficiently compelling circumstance[s] to render . . . unemployment involuntary." See, e.g., *Uvello* v. *Director of the Div. of Employment Security*, 396 Mass. 812, 815 (1986) ("[a] reasonable person could conclude . . . that [the claimant's] responsibility for preparing dinner for her husband, forty-three year old daughter, son-in-law, and granddaughter was not an obligation compelling [the claimant] to reject a shift ending at 6 P.M."). "The nature of the circumstances of each individual case, and the degree of compulsion that such circumstances exert on a claimant, must be objectively evaluated" on a case-by-case basis. *Crane* v. *Commissioner of the Dept. of Employment & Training*, 414 Mass. 658, 661 (1993).

We agree with the employer, however, that the board of review's decision is deficient. Nevertheless, we disagree that the problem has to do with a lack of substantial evidence. The deficiency lies instead in the review examiner's findings and rationale. The review examiner found that, given the claimant's inability to locate day care "satisfactory within her personal standards," the claimant left her job due to the conflict between work hours and child care responsibilities. The review examiner concluded that this constituted an urgent, compelling and necessitous reason for her having done so. The review examiner also stated, however, that he "did not feel it was necessary to address the issue of whether the claimant had a right to make the choices that she made." The result is a decision that fails to address certain core matters that are committed to the agency's "informed judgment." *Director of the Div. of Employment Security* v. *Fingerman, supra* at 464. For example, did the claimant prove that she "acted reasonably, based on pressing circumstances" in leaving her job? *Reep* v. *Commissioner of the*

*Dept. of Employment & Training, supra* at 851. See *Fergione* v. *Director of the Div. of Employment Security, supra* at 284; *Leone* v. *Director of the Div. of Employment Security, supra* at 732 n.4. It is the agency's responsibility expressly to decide this, not ours. *Manias* v. *Director of the Div. of Employment Security, supra* at 205.

While the evidence at the hearing before him was undisputed, the review examiner nonetheless had the benefit of observing the claimant as she gave testimony. Her demeanor may of course factor into the "exercise of judgment which is not purely factual" that the review examiner is called upon to make, set as it is against the backdrop of "the experience, technical competence, and specialized knowledge of the agency." *Director of the Div. of Employment Security* v. *Fingerman, supra* at 463. Although it is not made clear in the decision, it may be that the review examiner took into account when reaching his decision the claimant's longstanding employment history as a valued employee, her accommodation of the employer by returning early from her maternity leave, and her willingness to exhaust accrued vacation time to juggle work and child care responsibilities. The reasonableness of the claimant's efforts should be evaluated in light of the relevant circumstances, and the foregoing could well be relevant considerations in determining whether the claimant had taken reasonable steps to preserve her job.

It may also be, though not so stated in the decision, that the review examiner took into account the age of the child in evaluating the reasonableness of this claimant's efforts to locate suitable child care. The circumstances of each case must be individually assessed; the needs and demands of children and the employment circumstances of their parents vary so greatly that universally applicable rules defy easy formulation. In any event, the extent to which the mother of a baby must, in order to preserve her job, investigate and accept commercial day care in addition to ascertaining the availability of family and friends is a question the board of review, not the court, should determine in the first instance. The distance between home and work and the affordability of available commercial day care could also be factored into the requisite assessment whether the claimant

reasonably believed that she left her job for compelling reasons.

The review examiner did not make all requisite findings and did not sufficiently explain his reasons or the evidence underlying his decision.[6] "Without findings on all material issues, this court cannot exercise its appellate function." *Uvello* v. *Director of the Div. of Employment Security*, *supra* at 816. In the absence of "sufficient subsidiary findings to demonstrate that correct legal principles were applied," *ibid.*, quoting from *Lycurgus* v. *Director of the Div. of Employment Security*, 391 Mass. 623, 626-627 (1984), the decision cannot stand.

In view of this, we think the proper course is to remand the matter to the board of review for further proceedings consistent with this opinion. G. L. c. 30A, § 14(7). G. L. c. 151A, § 42. See *Conlon* v. *Director of the Div. of Employment Security*, 382 Mass. 19, 24-25 (1980); *Manias* v. *Director of the Div. of Employment Security*, *supra* at 205-206. The board of review may rest on the record in considering both the reasonableness of the claimant's conduct for purposes of G. L. c. 151A, § 25(*e*)(1), and her availability for work under § 24(*b*), and in articulating what it concludes as to both and why. "Alternatively, the board of review may [take additional evidence or] send this matter back to the review examiner for findings and a determination on the evidence in the record or for an evidentiary hearing on the issues raised." *Id.* at 206.

We therefore reverse the order of the District Court. A new order shall enter remanding this matter to the board of review for further proceedings consistent with this opinion.

*So ordered.*

---

[6]This is true as to the determination of both the involuntariness of the claimant's separation from employment pursuant to G. L. c. 151A, § 25(*e*)(1), and the claimant's availability for work pursuant to § 24(*b*). In order to obtain unemployment compensation, the claimant must satisfy both requirements. The review examiner was seemingly reluctant to receive evidence on the latter issue at the hearing for reasons that are not clear to us, though some evidence was nonetheless taken. He thereafter declined to make a determination on the matter, referring it to a "local office."