NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-330                                          Appeals Court

JESSICA DiGIULIO  vs.  DIRECTOR OF THE DEPARTMENT OF
UNEMPLOYMENT ASSISTANCE.

No. 17-P-330.

Suffolk.     December 7, 2017. - October 24, 2018.

Present:  Agnes, Blake, & McDonough, JJ.


Employment Security, Eligibility for benefits, Voluntary
     unemployment, Good cause.  Statute, Construction.


     Civil action commenced in the Chelsea Division of the
District Court Department on December 21, 2015.

     The case was heard by Benjamin C. Barnes, J.


     David A. Guberman, Special Assistant Attorney General
(Carolyn E. Hunt also present) for the defendant.
     Doreen M. Zankowski for the plaintiff.


     AGNES, J.  The sole question before us is whether the

plaintiff, Jessica DiGiulio, is entitled to unemployment

benefits after leaving her employment in Massachusetts to

relocate to Puerto Rico with her husband, a special agent with

the Drug Enforcement Administration (DEA), who was transferred

to work on the island.  We conclude that the twelfth paragraph

of G. L. c. 151A, § 25 (e), controls the outcome of this case and precludes DiGiulio from receiving unemployment benefits. We therefore reverse the judgment issued by the District Court judge.

Background. The essential facts are not in dispute. DiGiulio worked full time as a registered nurse for Ideal Image of Massachusetts beginning in May, 2014. Her husband works as a special agent for the DEA. In April, 2015, DiGiulio's husband was notified by the DEA that he would be transferred to Puerto Rico in July, 2015, for a period of at least three years. DiGiulio subsequently informed her manager that she intended to resign from her position in August, 2015, due to her husband's relocation. Her husband moved to Puerto Rico and began his assignment on July 27, 2015. DiGiulio's last day of work was on August 26, 2015. She remained in Massachusetts for approximately one month before joining her husband in Puerto Rico.

DiGiulio filed a claim for unemployment compensation with the Department of Unemployment Assistance (department) in September, 2015. In paperwork DiGiulio submitted to the department, she explained that she could no longer continue working at her job due to her "[h]usband's job relocating us to [P]uerto [R]ico." The department issued a notice of disqualification on September 25, 2015. On September 30, 2015,

DiGiulio requested a hearing on the matter, and a telephonic hearing was conducted before a department review examiner on October 20, 2015.  The review examiner concluded that DiGiulio was disqualified from receiving unemployment compensation on the basis that she left her employment to relocate with her husband to Puerto Rico.  DiGiulio appealed the decision of the review examiner to the department's board of review (board), which denied review and thereby adopted the review examiner's decision.  See G. L. c. 151A, § 41 (c).  Thereafter, DiGiulio filed a complaint for review in the District Court.  The judge ultimately vacated the decision of the board and ordered the department "to pay [DiGiulio] her unemployment compensation, if she is otherwise eligible."  The judgment was stayed pending final disposition of the department's appeal, which is now before us.

Discussion.  We review the board's decision based on the standards set forth in G. L. c. 30A, § 14 (7).  See G. L. c. 151A, § 42.  "The agency's decision may only be set aside if the court determines that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Coverall N. Am., Inc. v. Commissioner of the Div. of Unemployment Assistance, 447 Mass. 852, 857 (2006).  "[W]here an agency determination is based on a question of law, we review the matter de novo."  Cape

Cod Collaborative v. Director of the Dep't of Unemployment Assistance, 91 Mass. App. Ct. 436, 440 (2017).

General Laws c. 151A, § 25, sets forth a number of circumstances under which a claimant may be disqualified from receiving unemployment benefits. Subsection (e) of G. L. c. 151A, § 25, has been amended numerous times since it was first enacted in 1941. The first paragraph of G. L. c. 151A, § 25 (e), provides that a claimant may be barred from receiving unemployment benefits where she leaves her employment "voluntarily unless the employee establishes by substantial and credible evidence that [s]he had good cause for leaving attributable to the employing unit or its agent." The third paragraph of § 25 (e) (paragraph three), however, goes on to provide that "[a]n individual shall not be disqualified from receiving benefits under the provisions of this subsection, if such individual establishes to the satisfaction of the commissioner that his reasons for leaving were for such an urgent, compelling and necessitous nature as to make his separation involuntary." G. L. c. 151A, § 25 (e). There are decisions of both this court and the Supreme Judicial Court recognizing that a claimant's personal circumstances, including relocating with one's spouse or partner to another locality, may constitute such "urgent, compelling and necessitous" reasons for leaving gainful employment so as to render the claimant's

"separation involuntary."  Id.  See Norfolk County Retirement Sys. v. Director of the Dep't of Labor & Workforce Dev., 66 Mass. App. Ct. 759, 765 (2006), and cases cited.  Indeed, in Director of the Div. of Employment Sec. v. Fingerman, 378 Mass. 461, 462, 464 (1979), the Supreme Judicial Court held that the board properly awarded unemployment benefits to a claimant who left her job to move with her husband after he secured employment in California.  Similarly, in Reep v. Commissioner of the Dep't of Employment & Training, 412 Mass. 845, 852 (1992), the court concluded that a claimant who left her job in order to relocate with her partner to another part of the State was entitled to receive unemployment benefits.

However, the same year that Reep was decided, the Legislature again amended G. L. c. 151A, § 25 (e), see St. 1992, c. 26, § 20, by adding the following final paragraph (paragraph twelve) to subsection (e):

> "Notwithstanding the provisions of this subsection, no waiting period shall be allowed and no benefits shall be paid to an individual under this chapter for the period of unemployment next ensuing and until the individual has had at least eight weeks of work and in each of said weeks has earned an amount equivalent to or in excess of the individual's weekly benefit amount after having left work

to accompany or join one's spouse or another person at a new locality."[1,2]

The department argues that the enactment of paragraph twelve renders paragraph three inoperative if the sole basis of a claimant's request for unemployment benefits stems from his or her leaving a job to relocate with a spouse or partner.  We agree.

We review questions of statutory interpretation de novo, giving substantial deference to an agency's reasonable interpretation of legislative edicts existing within a complex statutory scheme that it is tasked with enforcing.  See Attorney Gen. v. Commissioner of Ins., 450 Mass. 311, 319 (2008).  "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms."  James J. Welch & Co. v. Deputy Comm'r of Capital Planning & Operations, 387 Mass. 662, 666 (1982), quoting Caminetti v. United States, 242 U.S. 470,

---

[1] Section 20 of St. 1992, c. 26, was enacted on April 27, 1992, and took effect that same day.  The court's decision in Reep issued on June 11, 1992, and involved events that occurred prior to the amendment of the statute.

[2] The above quoted statutory provisions requiring a claimant to earn a wage equal to or greater than his or her weekly unemployment benefit amount for a period of at least eight weeks as a precondition to receiving unemployment benefits is not at issue in the present appeal.

485 (1917). The Legislature's use of the words "[n]otwithstanding the provisions of this subsection" in paragraph twelve "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." Attorney Gen., supra, quoting Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18 (1993).

Prior to the Legislature's enactment of paragraph twelve in 1992, a claimant was entitled to obtain unemployment benefits after leaving a job to follow a spouse to another locality. See, e.g., Fingerman, 378 Mass. at 464. However, by adding paragraph twelve to § 25 (e) in 1992, including the language "[n]otwithstanding the provisions of this subsection," the Legislature made a clear statement that the limiting language in paragraph twelve prevailed over any other conflicting language within § 25 (e), including the language contained in paragraph three. To conclude otherwise would require that we "ascrib[e] no meaning to the 'notwithstanding' language" set forth in paragraph twelve. Attorney Gen., supra at 320. See G. L. c. 4, § 6, Third.[3] This result would contravene the most fundamental

---

[3] "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. c. 4, § 6, Third.

tenet of statutory interpretation: a "statute is to be construed as written, in keeping with its plain meaning." Stop & Shop Supermkt. Co. v. Urstadt Biddle Props., Inc., 433 Mass. 285, 289 (2001). Thus, regardless of whether leaving a job to follow a spouse or partner to another locality was at one time considered an "urgent, compelling and necessitous" reason for leaving gainful employment under paragraph three, since the 1992 amendment inserting paragraph twelve the statute has explicitly prohibited a claimant from receiving unemployment benefits "after having left work to accompany or join one's spouse or another person at a new locality."

While we recognize that G. L. c. 151A is to "be construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family," G. L. c. 151A, § 74, we cannot ignore a clear legislative mandate. Moreover, it is not for us to "comment on the wisdom of legislative enactments." Administrative Justice of the Hous. Court Dep't v. Commissioner of Admin., 391 Mass. 198, 205 (1984). Because DiGiulio's only articulated basis for leaving work was to accompany her husband to Puerto Rico, she is not entitled to unemployment benefits, based on the statutory

language set forth in paragraph twelve of G. L. c. 151A,

§ 25 (e).[4]

The judgment is reversed, and a new judgment shall enter affirming the decision of the board.

So ordered.

---

[4] DiGiulio further argues that she is entitled to benefits based on § 1212(F) of the department's "Service Representatives Handbook," which was in effect at the time she applied for unemployment benefits. This provision has since been rescinded by the department. We need not decide whether the department had the authority to issue such subregulatory guidance because DiGiulio would not be eligible for unemployment benefits even if § 1212(F) were applicable. Section 1212(F) provided that the spouse of a serving member in the armed forces was entitled to obtain unemployment benefits after resigning his or her employment in the event the claimant's spouse was involuntarily transferred to a new duty station. Here, DiGiulio's husband is an agent of the DEA and thus does not qualify as a serving member in the armed forces. See G. L. c. 4, § 7 ("'Armed forces' shall include army, navy, marine corps, air force and coast guard"). See also 10 U.S.C. § 101(a)(4) (2012) ("The term 'armed forces' means the Army, Navy, Air Force, Marine Corps, and Coast Guard").