NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-364

ADAM MOUCHARITE

vs.

DIRECTOR OF THE DEPARTMENT OF UNEMPLOYMENT ASSISTANCE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a judgment of the District Court affirming a determination by the Department of Unemployment Assistance (DUA) that he is ineligible for unemployment benefits pursuant to G. L. c. 151A, § 25 (e) (1).[2] On appeal, the plaintiff claims that the DUA review examiner (examiner) erred in determining that the plaintiff resigned without good cause and by making unsupported findings. We affirm.

---

[1] State Street Bank and Trust Company.

[2] Because the DUA board of review (board) denied the plaintiff's appeal, the DUA review examiner's decision is the final decision of the board.

Background.  We summarize the examiner's factual findings, supplementing as necessary with materials from the administrative record.  The plaintiff was a vice president and application developer officer at State Street Bank and Trust Company (bank) from January 3, 2011, until he resigned on April 1, 2022.  He had previously worked for the bank from July 2000 to December 2008.  In 2021, the bank's managing director (director)[3] became the plaintiff's supervisor.  Unbeknownst to the plaintiff, the director tasked another employee (employee A) with managing the plaintiff.  This reporting change was not reflected in the bank's system.  Between June 2021 and March 15, 2022, neither the director nor employee A met with the plaintiff to discuss his job performance.

On February 14, 2022, employee A informed the plaintiff that he could expect to receive a $9,000 bonus.  When the plaintiff did not receive a bonus, he called employee A, who responded that he would look into it and call the plaintiff back.  On March 12, when the plaintiff had not yet heard back from employee A, he emailed the director about his bonus.  The director responded that he would contact the plaintiff on March 14, but he did not.

_____

[3] For everyone but the plaintiff, we use the same terminology used in the DUA decision.

2

On March 14 and 15, the plaintiff emailed the human resources department to inquire about his bonus. The vice president of employee relations (vice president) responded that "she would look into it."

On March 15, the director explained to the plaintiff that he would not receive a bonus because, according to employee A's feedback, the plaintiff underperformed in 2021. The plaintiff responded that he did not work with employee A and had never met with him to discuss his job performance. The plaintiff followed up by emailing the vice president, who again said she would look into his concerns.

The following day, the plaintiff viewed his online 2021 year-end performance evaluation which stated that he "underperformed." Again, he followed up with the vice president; again, she responded that she would look into his concerns. That evening, the plaintiff became very upset; he experienced stress, anxiety, and heart palpitations and was unable to sleep. He did not seek medical attention, nor did he request a leave of absence from the bank.[4] The next day, the plaintiff submitted his resignation with two weeks' notice. He

_____

[4] The plaintiff took a leave of absence in 2019 after he had a heart attack.

3

finished work by April 1, and then filed for unemployment benefits with the DUA.

An initial hearing, affirmance, and appeal to the DUA board of review (board) were resolved unfavorably to the plaintiff and he filed a complaint for judicial review pursuant to G. L. c. 151A, § 42. The parties then filed a joint motion to remand the case for a new hearing, which was granted. Following de novo hearings, the examiner issued a second written decision affirming the determination that the plaintiff was not entitled to receive unemployment benefits under G. L. c. 151A, § 25 (e) (1) because the plaintiff was not discharged and the evidence was insufficient to show that he "left work involuntarily for urgent, compelling, and necessitous reasons." The board denied the plaintiff's application for review, thereby affirming the DUA decision. The plaintiff's appeal to the Attleboro District Court resulted in a judgment for the DUA.

Discussion. a. Standard of review. Our review of the board's decision is governed by G. L. c. 30A, § 14 (7). See G. L. c. 151A, § 42. "In reviewing an agency's decision, the court 'shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.'" Coverall N. Am., Inc. v. Commissioner of Div. of Unemployment Assistance,

4

447 Mass. 852, 857 (2006), quoting G. L. c. 30A, § 14 (7).  We review the board's decision to determine "whether [it] contains sufficient findings to demonstrate that the correct legal principles were applied, and whether those findings were supported by substantial evidence."  Norfolk County Retirement Sys. v. Director of the Dep't of Labor & Workforce Dev., 66 Mass. App. Ct. 759, 764 (2006) (abrogated on other grounds by DiGuilio v. Director of Dep't of Unemployment Assistance, 94 Mass. App. Ct. 292, 294 (2018)).  "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Lisbon v. Contributory Retirement Appeal Bd., 41 Mass. App. Ct. 246, 257 (1996), quoting G. L. c. 30A, § 1 (6).

b.  Substantial evidence.  The unemployment statute in general, and G. L. c. 151A, § 25, in particular, "discourages those who are not truly compelled to leave work by temporarily disqualifying those who leave their jobs voluntarily."  Raytheon Co. v. Director of Div. of Employment Sec., 364 Mass. 593, 596 (1974).  As applicable here, § 25 (e) (1) places the burden on the claimant employee to prove "either that he left his employment for good cause attributable to the employing unit, or that his reason for leaving was of an urgent, compelling, and necessitous nature that would render his departure involuntary."

5

Crane v. Commissioner of Dep't of Employment & Training, 414 Mass. 658, 660-661 (1993). Compare State St. Bank & Trust Co. v. Deputy Director of Div. of Employment & Training, 66 Mass. App. Ct. 1, 11 (2006) (employees who resigned following lay-off plan announcement did so for good cause attributable to employer because they "reasonably feared" they would be laid off) with Connolly v. Director of Div. of Unemployment Assistance, 460 Mass. 24, 29 (2011) (no good cause attributable to employer where employee who applied to terminate her employment "was not compelled to apply," and "did not believe [her] job was in jeopardy, and left in part for personal reasons").

An employee "has the burden of proving a reasonable attempt to correct those conditions of employment which he now claims justified his leaving his employment, unless he can show that such an attempt would have been futile." Kowalski v. Director of Div. of Employment Sec., 391 Mass. 1005, 1006 (1984). See Guarino v. Director of Div. of Employment Sec., 393 Mass. 89, 94-95 (1984) (findings insufficient, in part, to support conclusion plaintiff left work voluntarily and without good cause attributable to employer where remedies available to plaintiff and whether she pursued them were not detailed). In determining whether the employee has met this burden, the agency reviews whether the employee took "reasonable means to preserve

6

[their] employment." <u>Norfolk County Retirement Sys</u>., 66 Mass. App. Ct. at 766, citing <u>Raytheon Co</u>., 364 Mass. at 597-598.

On appeal, the plaintiff asserts that the examiner erroneously evaluated the circumstances that led to his resignation. Specifically, he maintains that the mental and physical distress he endured after viewing his 2021 performance evaluation, combined with his fear of having a second heart attack, compelled him to resign on March 17, 2022. He further asserts that he had good cause to resign in light of his prior negative experiences with the bank's human resources department. In sum, the plaintiff maintains that he acted reasonably in resigning.[5] We are not persuaded.

On the night of March 16, 2022, the plaintiff suffered from anxiety, high blood pressure, and heart palpitations. In some situations, an employee's health may mandate resignation. See <u>Cahalen</u> v. <u>Commissioner of Dep't of Employment & Training</u>, 41

---

[5] On appeal, the DUA maintains that the plaintiff waived his argument that he left work for urgent, compelling, or necessitous reasons, either because of his health crisis or because of discrimination or harassment. An argument is waived when not raised below. See <u>Lincoln Pharmacy of Milford, Inc</u>. v. <u>Commissioner of the Div. of Unemployment Assistance</u>, 74 Mass. App. Ct. 428, 436 (2009). These waiver claims are belied by the record, which includes multiple references to both the plaintiff's fragile health and to his claims of discrimination and harassment. Indeed, in its first decision, the DUA addressed the discrimination or harassment claim. Accordingly, the plaintiff did not waive this argument.

7

Mass. App. Ct. 26, 27-28 (1996), citing Director of Div. of Employment Sec. v. Fitzgerald, 382 Mass. 159, 161 (1980) (employee reasonably left job as welder due to pregnancy).  In assessing whether a case fits this paradigm, the examiner must evaluate the reasonableness of the employee's resignation together with the employee's attempts to preserve their employment.  See Norfolk County Retirement Sys., 66 Mass. App. Ct. at 766, 768.  In Dohoney v. Director of Div. of Employment Sec., 377 Mass. 333, 336 (1979), for example, the Supreme Judicial Court reasoned that unemployment benefits are not intended to be paid to "a claimant who, anticipating a necessary absence from work, fails to take reasonable means to preserve [his or] her job."  The Dohoney claimant made no attempt to explore the possibility of returning to work when physically able to do so after childbirth.  Id. at 338.  The court emphasized the claimant's inaction and ruled that "it was proper for the examiner to have concluded that if the claimant had wanted to preserve her job, she would have requested a leave of absence."  Id.[6]

---

[6] While it is not necessary to seek a leave of absence to preserve employment, see Guarino v. Director of Div. of Employment Sec., 393 Mass. 89, 94 (1984), here, the plaintiff neither sought such a leave nor allowed the human resources department time to review his concerns before he abruptly resigned.

Similarly, here, the plaintiff made no attempt to preserve his employment.  He did not request a leave of absence, and there is no indication in the record that he notified his supervisor of his health concerns, or otherwise sought accommodations for his health needs.  And by failing to seek medical attention on the evening of March 16 (or before tendering his resignation), the plaintiff deprived the examiner of objective, contemporaneous evidence of the severity of the plaintiff's health condition, which might have aided his cause.

The plaintiff also maintains that his departure was the result of discrimination or harassment and asserts that under 430 Code Mass. Regs § 404(5), an employee need not take steps to resolve a bad employment situation before leaving a position due to racial, sexual, or other unreasonable harassment.  As the plaintiff acknowledges, he bears the burden of proof and must "establish[] to the satisfaction of the commissioner" that his separation was "due to sexual, racial or other unreasonable harassment" of which "the employer, its supervisory personnel or agents knew or should have known."  G. L. c. 151A, § 25 (e); see Sohler v. Director of the Div. of Employment Sec., 377 Mass. 785, 788 n.1 (1979) ("The burden of proof as to all aspects of eligibility for unemployment benefits, including the burden of establishing good cause, rests with the worker").  He did not

carry that burden here.  Thus, in the circumstances the examiner correctly determined that the plaintiff failed to take reasonable steps to preserve his employment.[7]

The examiner's determination that the plaintiff's resignation was "voluntary and without good cause attributable to the employing unit" was supported by substantial evidence in the record.

                                        Judgment affirmed.

                                        By the Court (Massing,
                                          Hershfang & Tan, JJ.[8]),


                                        Clerk

Entered:  May 16, 2025.

---

[7] We are similarly unpersuaded by the plaintiff's contention that seeking a leave of absence or utilizing human resources' help would have been futile.  The plaintiff was granted a leave of absence in 2019 for health reasons, so he was aware that a leave of absence was an available alternative.  And the plaintiff's proclaimed distrust of the human resources department did not excuse him from seeking its intervention, nor from allowing it more than a day in which to respond to his complaints.

[8] The panelists are listed in order of seniority.